CORBIN CABINET LOCK CO. *v.* EAGLE LOCK CO.

DUER *v.* CORBIN CABINET LOCK CO.

*(Circuit Court, D. Connecticut. January 22, 1889.)*

PATENTS FOR INVENTIONS—NOVELTY—CABINET LOCKS.
 Letters patent No. 138,148, issued April 23, 1873, to E. G. Gory, for an improvement in locks for drawers, cover, in connection with a cavity cut out by a router, rounded at the bottom, and, if desired, dovetailed throughout, a lock with a front-plate of reduced size, rounded at the bottom, a back-plate of the same shape as the front, but a little larger, and side-walls engaging with the dovetail, the key-post being cut down flush with the back-plate, and all projections of the selvedge beyond the plates and walls cut off. The improvements shown by reissue No. 10,361, of July 1, 1883, to F. W. Mix, letters

No. 316,411, of April 21, 1885, to H. L. Spiegel, owned by complainant, and letters No. 262,977, of August 22, 1882, to M. L. Orum, owned by defendant, are the practical removal of the side-walls by extending the front and back plates laterally to form spaces on the sides of the case engaging with a rib left in the cavity, so that a better fit can be obtained by bending the edges of the back-plate to suit the dovetail, the extension of the front-plate beyond the back-plate to fit a countersunk recess around the cavity, which allows the restoration of the former length of the key-post, and the extension inward of the top-plate or selvedge, so as to cover the increased depth of cavity required for the key-post. Complainant and defendant both sold locks having the extended front-plate fitting the countersunk recess, (not shown in the reissue,) but without side-ribs, under a rectangular selvedge, (as shown in the Spiegel patent of 1885,) and the spaces between the plates, (not shown in the Orum patent.) *Held*, that the fact that this lock had commended itself to the public favor was no proof of the inventive novelty of either of their patented improvements, which were *prima facie* the product of mere mechanical skill.

In Equity.

Bills by the Corbin Cabinet Lock Company against the Eagle Lock Company, and by A. Adgate Duer against the Corbin Cabinet Lock Company, for injunctions against the infringement of certain patents.

*Charles E. Mitchell*, for the Corbin Cabinet Lock Company.

*Benjamin F. Thurston* and *Wilmarth H. Thurston*, for the Eagle Lock Company and A. Adgate Duer.

LACOMBE, J. The questions raised in these cases are so closely connected that they may best be disposed of in a single opinion. The patents under which the respective parties claim all relate to what are known in the trade as "machine" locks, a term apparently referring to the method of their insertion in the wood-work of the drawer or door to which they are attached. They are locks for furniture, such as are used on bureau or desk drawers, the doors of wardrobes and washstands, etc., being of the general class of goods known as "cabinet locks." Prior to 1873 the only style of cabinet lock known was the common lock, with which every one is familiar, such as have been used on bureaus, washstands, and the like for very many years. All parts of this old style lock were rectangular, or square-cornered. In order to insert one of them in a drawer it was necessary to form a recess to receive its several parts. Owing to the shape of these parts of the lock, and the consequent rectangular character of the recesses made to receive them, it was absolutely necessary that they should be cut by hand, for the reason that any machinery for the purpose must necessarily be of a revolving character, the result of such revolution being to leave the recess so formed rounded or semi-circular in shape. After the recesses were cut, and the lock fitted in them, it was secured in place by screws, (usually two or four in number,) also inserted by hand-labor. The formation of these recesses by hand was slow and expensive, requiring skilled workmen, and consuming much time. With the development of improved methods and machinery for the manufacture of the lock, its cost was steadily reduced, but the cost of applying it remained practically the same, with the result that a time came when the cost of applying the lock by the old method was almost as great, if not greater, than the cost of the lock itself. This was a serious matter to the furniture makers, and the problem of

reducing the cost of applying the lock was one calling for solution. It was of course known that mortises or cavities could be made by machinery very rapidly, and very cheaply, but the difficulty was to fit lock to cavity, without any hand-chiseling, and to dispense with the necessity of the screws (driven by hand-labor) to secure it when fitted.

In 1873 (April 22d) a patent for improvement in locks for drawers, etc., was issued to E. G. Gory. It is known as letters patent No. 138,-148. Gory cut out, with a revolving tool known as a "router," a cavity rounded at the bottom, and (if desired) dovetailed throughout. He made his lock to fit this cavity so that it could be slid in from the top. This he accomplished by reducing the size of his front-plate, rounding it at the bottom, so as to conform to the shape of the cavity face; by extending his back-plate or cap-plate so that it was of the same shape as the front-plate, but a little larger; uniting the front and back plates by walls, which thus completely encased the mechanism, and engaged with the dovetail of the cavity. He also cut down the key-post flush with the back-plate, and cut off all projections of the selvedge beyond the plates and their connecting walls. To insert the Gory lock it was necessary only to cut the dovetailed cavity with a routing machine gauged to correspond with the size of the lock, which was then slipped into the cavity. It was there supported against movement downward or sideways by the engagement of the sides and bottoms of its two plates and their connecting walls with the surrounding woodwork; against movement inwards by the back-plate resting against the base of the cavity; against movement outwards by the engagement of the back-plate and the connecting walls with the dovetail of the cavity. Thus, also, the use of screws and hand-labor in driving them was dispensed with. In this Gory patent both parties have an interest. Neither disputes its novelty and invention. It seems to cover a distinct advance in the art, and there is nothing in the record which would warrant a finding that his invention was not patentable. It is with its modifications that these suits are concerned.

The Corbin Cabinet Lock Company, plaintiff in the first and defendant in the second action, is the owner of two patents: No. 241,828, May 24, 1881, to Henry L. Spiegel, (reissued as No. 10,361, to F. W. Mix, July 31, 1883,) for improvements in cabinet locks; and No. 316,411, April 21, 1885, to Spiegel, for new and useful cases for locks. It claims that locks made by the Eagle Lock Company infringe the first claim of the reissued patent, and all the claims of the later patent. The Eagle Lock Company and A. Adgate Duer (whose interests are the same) control patent No. 262,977, dated August 22, 1882, to Morris L. Orum, for an improvement in lock cases. The single claim of this patent it is contended that the Corbin Lock Company infringes. The improvements on Gory's invention, which are claimed to be shown in these patents, are briefly: (1) The practical removal of the connecting walls between the front and back plates. This is effected by extending these plates laterally, still preserving their shape (conformed to the rounded cavity.) By this means, in lieu of the connecting and engaging walls of Gory, there

were formed spaces or grooves on the opposite sides of the lock-case. Into these spaces there interlocks a projection, or rib, left in the cavity by the router. Projecting rear and front plates are found in the old style locks. (2) The extension of the front-plate beyond the back-plate, its projecting edges being adapted to fit a countersunk recess around the routed cavity. (3) The extension inward of the top-plate or selvedge, so as to cover the increased depth of cavity required for the extended key-post. The advantage of the first of these improvements (the side extension of the plates) is apparently that the lock fits better, at least when used with a Gory dovetail. The side edges of the back-plate may be readily bent closer to, or forced further apart from, the front-plate, being thus accommodated to the slight changes of form and size of the dovetail produced by heat or moisture; and by nipping the wood more vigorously they hold the lock more solidly than would the engaging connecting walls. The advantage of the second of these improvements is that, as the front-plate in its countersunk cavity effectually prevents the inward motion which in Gory's patent was resisted only by the encased lock resting on the base of the cavity, the key-post which he cut off may be restored to its former length, a restoration assisted by the third modification. The first of these improvements consists in the reduction of the surface which engages with the wooden dovetail, so that, instead of impinging upon it (by means of the side walls) for the entire depth of the case, its only engagement is at the edge of the back-plate. So simple a mechanical modification, in view of the fact that in the old style both back and front plates were often extended beyond the case, can hardly be considered invention. So, also, the insertion of an extended front-plate in a countersunk recess was a not uncommon contrivance in the old style. When secured in its place by screws it supported the lock firmly, giving room for an extended key-post, and it but accomplishes the same purpose when held there not by screws, but by the inward pull of the back-plate or dovetailed side-walls engaging on the wooden dovetail. Neither of these modifications, therefore, seems to evidence more than ordinary mechanical skill.

Each party, however, contends that there is invention in the improvement exhibited in its patent, and both point to the history of the art for corroboration of that contention. It seems that locks made on the model shown by Gory were not, at the time Spiegel and Orum patented their contrivances, in actual use in the trade. What efforts, if any, were made to introduce them to notice does not appear. The principle, however, on which they operated—a principle destined, as one of the witnesses puts it, "to revolutionize the art"—had been discovered and made known, and, subject to Gory's monopoly, was at the service of those who used locks in drawers and cabinets. To make the lock fit into a routed cavity without hand-chiseling, and to support it against movement, without the use of screws by the engagement of its parts with the surrounding wood-work, was, for all that appears in the case, the discovery of Gory. To that extent the field of invention was occupied as against subsequent inventors.

The improvements respectively claimed for the patents in suit are the extension of the key-post to its original length, (Gory cut it off flush with the plate,) and the substitution of intervening spaces between the plates for the inclined and engaging side-walls of the Gory encased lock. It appears that the new lock was immediately adopted by the trade. Its sales have constantly and rapidly increased, and it is steadily displacing the old style lock. To this circumstance each side appeals as decisive upon the question of patentability. The fact that any new device has commended itself to the public as practicable and desirable, and a better one than those which had preceded it, no doubt affords a safer criterion of inventive novelty than any subsequent opinion of an expert or intuition of a judge. The difficulty in the present case, however, lies in the application of that criterion. The lock which has thus won the public favor is the lock neither of the Orum nor of the Spiegel patents. The locks sold by both companies (they are substantially alike) have the extended front-plate fitting into a countersunk round-bottom recess, (not shown in the Spiegel reissue,) and adapted to hold the lock so as to give clearance for an extended key-post, but without side-ribs under a rectangular selvedge (as shown in the Spiegel patent of 1885,—a mode of fitting which forbade the entire abandonment of hand-cutting.) They have also the intervening spaces between the plates, (not shown in the Orum patent,) securing, as it is claimed, a better fit. There is evidence to show that both of these modifications have contributed to commend the new lock to the public favor. That it would have succeeded with either one alone, however, the evidence does not show. The proof of acceptance by the public, therefore, falls short of the measure required to demonstrate, in the case of either patent standing alone, the inventive novelty of what seems *prima facie* to be the product of ordinary mechanical skill. Usual decree for the defendant in each case.