## CORBIN CABINET LOCK COMPANY *v.* EAGLE LOCK COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

No. 42. Argued October 18, 19, 1893. — Decided October 30, 1893.

The first claim under the reissued letters patent No. 10,361, issued to Henry L. Spiegel, July 31, 1883, for improvements in cabinet locks, is void because it broadens and expands the claims in the original patent, and it does not appear that there was any accident, inadvertence, or mistake in the specification and claim of the original, or that it was void or inoperative for any reason which would entitle the patentee to have a reissue.

When an applicant for letters patent makes a broad claim which is rejected, and he acquiesces in the decision and substitutes a narrower claim therefor, he cannot insist upon a construction of the narrowed claim which would cover what was so rejected.

To warrant new and broader claims in a reissue, they must not only be suggested or indicated in the original specification, drawings, or models, but it must appear that they constitute part of the invention intended to be covered by the original patent.

In applications for reissue the patentee cannot incorporate claims covering what had been rejected on the original application.

Letters patent No. 316,411, granted April 21, 1885, to Henry L. Spiegel for improvements in cabinet locks are void for want of patentable invention.

IN equity, to prevent the infringement of letters patent. Decree below dismissing the bill, from which the complainant appealed. The case is stated in the opinion.

*Mr. John P. Bartlett* (with whom was *Mr. Charles E. Mitchell* on the brief,) for appellant.

*Mr. Wilmarth H. Thurston* and *Mr. Benjamin Price* for appellee.

MR. JUSTICE JACKSON delivered the opinion of the court.

The appellant brought this suit against the appellee for the infringement of two letters patent granted to Henry L. Spiegel, for improvements in cabinet-locks — one being reissue letters patent No. 10,361, dated July 31, 1883, and the other No. 316,411, dated April 21, 1885, both of which were assigned by Spiegel to Frank W. Mix, and by Mix to the appellant. They relate to what are known in the trade as "machine" locks, so called from the fact that they are adapted for insertion in mortises cut entirely by machinery or routing-tools, and thus distinguished from the "old-style" lock previously used, which was adapted only for mortises cut or chiselled by hand. The locks covered by the patents are used chiefly on furniture.

It is alleged that the defendant's lock, which is substantially that covered by the Morris L. Orum patent of August 22, 1882, infringes the first claim of the reissue, and the three claims of the patent of 1885. The defences set up as to the reissue are: That the first claim thereof is for a different invention from that described in the original patent; that it is an expansion of the original claim, and is not infringed. As to the patent of 1885, the defences interposed are: That it is anticipated by other persons and patents, and want of patentability. The opinion of the court below dismissing the bill is reported in 37 Fed. Rep. 338. From that decree the present appeal is prosecuted.

The history of the art on this subject is so fully set forth in the opinion of Mr. Justice Brown in the case of *Duer* v. *Corbin Cabinet Lock Co.*, 149 U. S. 216, decided at the last term of this court, that it need not be repeated here.

No special consideration was given by the court below to the first claim of the reissue patent, and while it was not seriously insisted in oral argument before this court, that there was error in the judgment of the court below on this branch of the case, counsel for appellant have nevertheless contended in their brief that the first claim of the reissue patent is valid, and was infringed. It becomes necessary, therefore, to examine the question raised on the reissue patent.

The original patent on which the reissue is founded was

No. 241,828, dated May 24, 1881. It appears from the file wrapper and contents that in his original application the pat-· entee made three claims, the first being for "cabinet-lock having its rear-plate projecting at each side of the lock-case (at GG), substantially as and for the purpose specified;" the second was for a lock having such projecting rear-plate, and having its front-plate provided with a slit and strip; and the third claim was for a lock having such projecting rear-plate, and having the upper part of such projection bent toward the front-plate (as at G'). Each of these claims was rejected by the Patent Office, the first and broader claim on reference to the Gory patent, No. 138,148, dated April 22, 1873; the second on reference to the Bishop patent, No. 201,219, dated March 12, 1878; and the third on the ground of no invention.

In the letter of rejection it was suggested to the applicant, that a "single specific claim, limited to its (the lock's) exact construction," might be allowed. This suggestion was ac- cepted; all three claims originally filed were cancelled, and there was substituted and allowed a single claim as follows: "A cabinet-lock having its rear-plate projecting beyond each side of the lock-case as at GG, and having the upper part of each projection bent toward the front-plate D, combined with the front-plate D, said front-plate having a slit n, and strip m, substantially as and for the purposes specified."

Having originally sought broader claims, which were re- jected, and having acquiesced in such rejection, and having withdrawn such claims and substituted therefor this narrower claim, describing a particular or specific lock, as such, neither the patentee, nor his assignees, can be allowed under the authorities to insist upon such construction of the allowed claim as would cover what had been previously rejected. *Shepard* v. *Carrigan,* 116 U. S. 593; *Roëmer* v. *Peddie,* 132 U. S. 313; *Royer* v. *Coupe,* 146 U. S. 524.

Aside from the operation of this estoppel, it is perfectly clear that the action of the Patent Office in rejecting the three original claims was correct, for the "old-style" lock, which was in use long prior to the date of the Spiegel so-called inven- tion, had a projecting front-plate, and a projecting rear-plate,

which necessarily included a space between them. So, too, the lock of the Gory patent had a projecting rear-plate, but lacked the bent-in feature and slitted front-plate. But the Spiegel patent presented no patentable differences. The specification and claim of the original patent, as allowed, described and covered a lock *per se* of a special construction, and did not extend to or include anything in combination therewith.

In the application for reissue, filed April 28, 1883, the original specification was amended in two material respects. The new matter consisted of a statement describing how a mortise should be formed, and how the lock is to be combined therewith, so as to be held laterally therein, as follows: "By means of the portions of the walls of the mortise which are in front of the locking-plate G' and in the rear of the front-plate of the lock." And there was also added this further statement: "It will thus be seen that the lock is prevented from lateral displacement by the projections upon the back-plate in combination with the corresponding shape of the mortise, and that it is prevented from vertical displacement by the thin strip $m$ and bent part G'." With these additions to the original specification, there were allowed in the reissue, the original claim and three new claims, as follows:

"1. A cabinet-lock having its front-plate and rear-plate extending laterally beyond the body of the lock, in combination with the mortise, whose walls enter the space between the front and rear-plate, whereby fastening screws are dispensed with, substantially as described.

"2. A cabinet-lock having its front-plate and rear-plate extending laterally beyond the body of the lock, and having also the edge G' upon the rear-plate bent toward the companion plate, substantially as described, and for the purpose specified.

"3. A cabinet-lock having the thin strip $m$ and the slit $n$ at the lower corner of its outer plate, substantially as described, and for the purpose specified."

Of these reissue claims the first is the only one which it is insisted the defendant's lock infringes. It is perfectly manifest that the new matter in the reissue specification was

inserted to lay the foundation for either changing the original claim, or the patent covered thereby; or for the purpose of expanding that claim, so as to make it cover substantially what had been rejected on the original application. An examination of the proceedings in the Patent Office, in connection with the original application, and the claim of the original patent, renders it perfectly obvious that the first claim of the reissue is not for the lock as such, but is for a combination of a lock with a mortise, and in this respect it is for a different invention from that described in the single claim of the original patent, which covered only a lock of a definite description. The first claim of the reissue clearly includes, as an element of the combination therein described, a peculiarly constructed mortise to receive the lock. This element the original patent does not indicate as being any part of the invention of the patentee. As already stated, the claim of the original patent is for a lock as such, while the first claim of the reissue is for a combination of that lock with something not claimed as an element in the original patent, viz. a peculiarly shaped mortise. This was a departure from the original claim not warranted by anything appearing in the original specification.

Again, this first claim of the reissue clearly operates to broaden and expand the original claim, in that it omits or contains no reference to any means whatever for holding the lock in place vertically, such as are described in the original claim. It drops out and eliminates elements shown in the original claim, such as the bent-in portion of the plate and the slit $n$ and strip $m$, by means of which the necessity for fastening screws was to be dispensed with. This claim of the reissue was, for these reasons, clearly unwarranted. It does not appear that there was any accident, inadvertence, or mistake in the specification and claim of the original patent, or that it was void or inoperative for any reason such as would entitle the patentee to have a reissue thereof.

It is settled by the authorities that to warrant new and broader claims in a reissue, such claims must not be merely suggested or indicated in the original specification, drawings, or models, but it must further appear from the original patent

that they constitute parts or portions of the invention which were intended or sought to be covered or secured by such original patent. It is also settled by the authorities that in applications for reissue the patentee is not allowed to incorporate or secure claims covering or embracing what had been previously rejected upon his original application. *Bantz* v. *Frantz*, 105 U. S. 160; *Heald* v. *Rice*, 104 U. S. 737; *Miller* v. *Brass Co.*, 104 U. S. 350; *James* v. *Campbell*, 104 U. S. 356; *Topliff* v. *Topliff*, 145 U. S. 156. For these reasons, and other reasons which might be stated, we are clearly of opinion that the first claim of the reissue patent No. 10,361, dated July 31, 1883, is void, and that appellant was entitled to no relief in respect thereto, even if the original patent on which it was founded could be sustained as a valid patent.

In respect to the Spiegel patent of 1885 for improvements in cases for locks, we concur in the conclusion reached by the Circuit Court that it was invalid for want of patentable invention. We are further of opinion that, in view of the state of the art, as shown by the "old-style" lock, by the Gory patent of 1873, and by the Spiegel patent of 1881, the patent of 1885 was fully anticipated.

The application for the patent of 1885, as originally filed, contained a single claim, as follows:

"I claim as my invention the herein described lock-case having overhanging edges and a front plate projecting laterally and below the adjacent sides of the case, and rounded at the bottom, whereby the lock is adapted for insertion in a routed cavity into which the lock-plate fits, substantially as described."

This was a broad claim to a lock having a projecting front-plate and a projecting cap-plate, so as to form intervening spaces or grooves on the opposite edges of the lock-case, the front-plate being rounded at the bottom. It was practically for the same construction of lock-case as shown in the prior Spiegel patent of 1881, except that the front-plate was to be rounded at the bottom. This claim on an interference with the Orum patent No. 262,977, of 1882, was rejected, the Commissioner of Patents holding that Spiegel had no right to make

a claim any broader than the specific device which he showed. He thereupon amended his claim so as to read as follows:

"A lock-case having a top-plate and an overhanging cap, and a front-plate projecting beyond the adjacent walls of the cap, and rounded at the bottom, whereby the lock is adapted to be inserted and held in a routed cavity by the projecting front and cap-plates."

It was held by the Commissioner of Patents, under the interference already referred to, that this claim was lacking in patentability.

Spiegel subsequently presented a specification which, after describing the state of the art, and referring to the original patent of May 24, 1881, stated that "while this latter construction of lock possesses valuable features of improvement not disclosed by the prior art, yet the form of lock shown and described in the patent is such as to preclude its adoption for use in routed cavities, because its front-plate is not of the proper form to fit within and cover a cavity made by a routing-tool. The object of this invention is to obviate the objectionable features hereinbefore set forth, and provide a lock-case of such form and construction that it may have a projecting key-post, if so desired, and be secured within a routed cavity and snugly retained therein, so as to conceal the cavity from view, and form a neat and finished appearance when in place. With these ends in view, my invention consists in a lock-case having its edges constructed to engage or interlock with the side walls of a routed cavity, and provided with a front-plate having a rounded bottom, adapted to fit within a countersunk recess around the routed cavity and constitute a support for the lock-case and conceal the cavity from view."

What he claimed as new and desired to obtain by letters patent was:

"1. A lock-case having a front-plate formed with a rounded bottom, a cap-plate forming in connection with the front-plate intervening spaces or grooves on the opposite edges of the lock-case, and a top-plate extending over and beyond the cap-plate, the projecting edges of the front-plate being adapted to fit within a countersunk recess around the routed cavity within which the lock-case is inserted, substantially as set forth.

" 2. A lock-case having a front-plate formed with a rounded bottom, a cap-plate secured to or connected with the front-plate and constructed to form therewith intervening spaces or grooves on opposite edges of the lock-case, and a top-plate extending over and beyond the cap-plate, in combination with a support having a routed cavity provided with a countersunk recess adapted to receive the outer and projecting edges of the front-plate, substantially as set forth.

" 3. A lock-case having a front-plate formed with a rounded bottom, a cap-plate secured to or connected with the front-plate and constructed to form therewith intervening spaces or grooves on opposite edges of the lock-case to retain it in place within the routed cavity, and a top-plate extending over and beyond the cap-plate, in combination with a support provided with a rounded cavity of a depth sufficient to receive the projecting edge of the top-plate flush therein, substantially as set forth."

These claims were several times rejected by several different examiners, and Commissioners of the Patent Office, because they were lacking in patentable invention, and were anticipated by the prior state of the art and previous patents. How they came to be finally allowed and issued is wholly unexplained in the record.

The claim to invention in this patent of 1885 must rest upon differences which existed, if any, between the lock and the mortise, therein described, and what was shown and disclosed in the prior state of the art, and in the Gory patent of 1873, and the Spiegel patent of 1881. In the lock of the patent of 1881, the front-plate was straight at the bottom instead of being rounded as in the patent of 1885. This change involved nothing more than mechanical skill so as to make the bottom of the front-plate fit in the routed cavity, which was necessarily rounded. The further change described in the patent of 1885, of a countersunk recess to receive the projecting front-plate of the lock, flush therewith, was not new; for such countersunk recess was frequently found in the " old-style " locks, when it was desired to make the front-plate thereof flush for the purpose of presenting a neat finish. This countersunk recess, used in connection with the " old-style " locks, was

made by hand-chiselling, and was intended to present or produce a neat finish. The making of such countersunk recess for substantially the same purpose in the patent of 1885 by a routing-tool instead of by hand-chiselling, did not rise to the dignity of an invention. The change involved nothing more than mechanical skill, which was produced by a change in the form of the routing machine.

Again, the Gory patent of 1873 shows a lock with a round bottom front-plate, and it further shows that the front-plate of that lock projects below the body of the lock, though it does not project at the sides; while the Sargent patent, No. 210,807, dated December 10, 1878, shows a lock having a round bottom front-plate, which front-plate projects below and at the sides of the body of the lock, as in the Spiegel lock, patented in 1885. The purpose of rounding the front-plates at the bottom in both of the locks of the Gory and Sargent patents was to enable them to fit in a rounded or routed cavity. So the countersunk recess, made for the purpose of receiving the projecting front-plate flush, was old, and called for no invention on the part of Spiegel. What Spiegel did in this respect was what had long before been done in the use of the "old-style" locks. The fact that he made his mortise, including the countersunk recess, with a routing-tool instead of by hand-chiselling, certainly does not rise to the dignity of invention. In his arrangement of the lock and mortise, the lock is supported vertically by the selvage, and the sole object of letting the front-plate in flush by means of the countersunk recess was to produce a neater finish and more attractive article than could be produced without such countersunk recess, or, as he expresses it in his specification, "to conceal the cavity from view and form a neat and finished appearance when in place." All that Spiegel did was to make his mortise, including the countersunk recess, with a routing-tool, so that it would be rounded at the bottom, and then make the front-plate of his lock rounded to correspond with this rounded cavity, and fit in flush in the countersunk recess. This change exhibits no patentable subject of invention over and above that which is disclosed in his prior patent of 1881, and shown

in the Gory and Sargent patents.   These changes were simply obvious modifications of such prior patents, and cannot be sustained as a patentable invention.

We are of opinion, therefore, that there was no error in the decree below and that the judgment should be

*Affirmed.*

Mr. Justice Brown did not sit in this case and took no part in its discussion.