### GRAND RAPIDS SHOW CASE CO. v. BAKER et al.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1914.)

No. 2350.

1. PATENTS (§ 141*)—REISSUES—ENLARGEMENT OF CLAIMS.

A reissue cannot be permitted to enlarge the claims of the original patent by including matter once intentionally omitted, and acquiescence in the rejection of a claim, its withdrawal by amendment, either to save the application or to escape an interference or the acceptance of a patent containing limitations imposed by the Patent Office, which narrow the scope of the invention as at first described and claimed, are instances of such omission.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. § 141.*]

2. PATENTS (§ 136*)—REISSUES—GROUNDS OF REISSUE.

The deliberate acts of the applicant's attorney in protracted proceedings in the Patent Office leading to the issuance of the patent cannot be treated as inadvertence, accident, or mistake which will authorize a reissue.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 198½; Dec. Dig. § 136.*]

3. PATENTS (§ 144*)—REISSUES—REVIEW OF DECISION OF PATENT OFFICE.

A court will review the decision of the Patent Office on the question of inadvertence, accident, or mistake in proceedings for a reissue where the matter is manifest from the record.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 215–217; Dec. Dig. § 144.*]

4. PATENTS (§ 328*)—VALIDITY OF REISSUE—WARDROBE.

The Kennedy reissue patent, No. 11,907 (original No. 631,525), for a wardrobe, is void in so far as its claims are broadened to include other forms of construction of the extensible garment-hanging racks or slides than the one to which the original patent was expressly limited in the course of the proceedings in the Patent Office. Limited as it must be to the specific structure of the original patent, also *held* not infringed.

5. PATENTS (§ 178*)—INFRINGEMENT—PATENT FOR IMPROVEMENTS.

A patent for a device which is but a secondary improvement on existing devices and marks but a small step in the art is entitled only to a correspondingly narrow range of equivalents.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. § 178.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. PATENTS (§ 328*)—INFRINGEMENT—ARTICLE SUPPORT FOR WARDROBES.

The Vanderveld patent, No. 825,362, for an extensible article support for wardrobes, as limited by the prior art, *held* not infringed.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John E. Sater, Judge.

Suit in equity by the Grand Rapids Show Case Company against Barney R. Baker, Walter A. Eversman, Lizzie Eversman, and the Curtis-Leger Fixture Company. Decree for defendants, and complainant appeals. Affirmed.

Charles M. Wilson and Hugh E. Wilson, both of Grand Rapids, Mich. (Cyrus W. Rice, of Grand Rapids, Mich., of counsel), for appellant. Frederick Benjamin, of Chicago, Ill., for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This is a bill in equity brought by the appellant, the Grand Rapids Show Case Co., the plaintiff below, against Barney R. Baker and the other individual appellees, doing business as B. R. Baker & Co., for the alleged infringement of letters patent No. 11,907, on wardrobes, reissued to John E. Kennedy, May 7, 1901, and subsequently assigned to the plaintiff, and letters patent No. 825,362, on article-supports for wardrobes, issued to the plaintiff, as assignee of Anthony Vanderveld, July 10, 1906; the bill alleging that the inventions described in said two letters patent were adapted for, and capable of, conjoint use in one structure, and were both infringed by the structure used by the defendants. The appellee the Curtis-Leger Fixture Co., being the manufacturer of the structure used by the defendants, under letters patent No. 909,990, on extensible supporting devices, issued to Elmer A. Clark, January 19, 1909, was allowed to intervene and conduct the defense, and is hereinafter called the defendant. The defenses were anticipation and want of invention; invalidity of the Kennedy reissued patent; non-infringement; and multifariousness. After a hearing on pleadings and proof, the court below, being of opinion that the defendants' structure did not infringe either of the plaintiff's patents, dismissed the bill of complaint, with costs; from which decree the plaintiff has appealed to this court.

The devices in controversy, which are known as garment racks or slides, are extensible garment-hanging devices, used in connection with wardrobes in stores for the sale of ready-made garments. Each consists, in the commercial structures, of three horizontal members of equal length, arranged vertically, the upper member being fixed in position inside the wardrobe, and the two others, from the lower of which the garments are suspended, being progressively slidable or extensible, upon a telescoping principle. When retracted or closed, the entire rack, with the suspended garments, is inside of and protected by the wardrobe; when fully extended, the intermediate member projects about half its length beyond the upper fixed member, and the lower member about half its length beyond the intermediate member, thus ex-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tending the lower member entirely outside of the wardrobe and making the suspended garments readily accessible.

The following illustration shows a wardrobe, with the defendants' garment rack extended:

In the defendants' commercial device the upper fixed member of the garment rack consists of a hollow rectangular casing, with a slit in the bottom; the intermediate member, of two bars joined in the form of an I beam; and the lower member, to which a garment-hanger rod is attached, of a hollow rectangular casing similar to the upper member, but inverted, with the slit in the top. The web of the intermediate beam extends through the slits into the interior of each of the two rectangular casings, its flanges being within their cavities, and thus connecting them together. In its operation the upper flanges of the beam slide upon the lower flanges of the upper casing, and the upper flanges of  the lower casing slide, in turn, upon the lower flanges of the beam; there being roller bearings or other anti-friction devices inside of each of the casings at suitable points of contact with the beam. The following illustration shows the interfitting arrangement of the casings and beam, both connecting them together and enabling them to slide the one upon the other:

*Kennedy's Reissued Patent.* The specification of Kennedy's reissued patent states that the object of his invention "is to design a form of wardrobe more particularly applicable for stores for ready-made garments, whereby storage-space may be economized, classification of size and price facilitated, and time saved in selling and handling the goods," and that "it consists, essentially, of a wardrobe, each section of which is  provided with extensible supports or hanging devices, comprising each a plurality or set of members, preferably tubes or rods, the uppermost member of each set being mounted upon or carried by the frame of the wardrobe, and the lower member being suspended by suitable carriers from the said upper member."

Figure 3 of the drawings, showing one of the extensible hanging devices retracted, and Figure 4, showing such device partly extended, are here reproduced.

Fig.3.

Fig.4.

The extensible hanging device is thus described in the specification:

"I have herein shown the extensible support or hanging device as comprising an elongated main supporting member $F$, preferably made as a tube or rod, and a plurality of longitudinally-movable auxiliary members supported by and below the main member, as $F^1$ $F^2$. The main member $F$ is supported on the back $B$ by the bracket $G$ and on the top front board by the bracket $H$, said brackets being suitably attached to member $F$. The auxiliary member $F^1$, shown as situated next below the fixed member $F$, is suspended therefrom and sustained thereby by upturned carrier-brackets $II^1$, brazed or otherwise connected to the member $F^1$ at its inner end and intermediately of its length, respectively, as clearly illustrated in Figs. 3 and 4. The end bracket is provided with means to counteract the upward thrust of the adjacent end of its attached member, and herein the bracket $I$ is shown as provided with grooved rollers $ii$, journaled therein above and below the member $F$ to engage therewith, the bracket $I^1$ having a single grooved roller $i^1$ resting on the member $F$. The third or undermost member $F^2$ of the set or series is similarly provided at its inner end and intermediately of its length with upturned carrier-brackets $JJ^1$, respectively, suitably secured at their lower ends to the member $F^2$. Suitable rollers $j$ are journaled in the bracket $J$ to engage and run upon the top and bottom of the intermediate member $F^1$, while the bracket $J^1$ has a single grooved roller $j^1$ to travel upon the top of the member $F^1$, which latter is shown as provided at its outer end with a stop-collar and handle $f$, stop-collar $f^1$ being secured to the outer end of the member or rod $F^2$."

The specification contains six claims, in one of which the horizontal members of the extensible hanger are described as three "tubes" or "rods"; in two, as a main supporting "member" and a plurality of auxiliary "members"; and in three, as a main supporting "rod or tube" and a plurality of auxiliary "rods or tubes." Claims 1, 2 and 3, which sufficiently illustrate these three classes, are as follows:

"1. The combination with the wardrobe, of a tube or rod having fixed supports in the frame of the wardrobe above the level of the door or opening, a second tube supported by the fixed tube and having the outer end free, and suspended at the inner end and intermediately of its length from the fixed tube by upturned brackets, so that said second tube may be slid out approximately half its length beyond the outer end of the fixed tube, and a third tube suspended from the second tube and having its outer end free, and supports at its inner end and intermediate of its length, co-operating with the

second tube, whereby the third tube may be slid out approximately its entire length beyond the outer end of the fixed tube and the front of the wardrobe. 2. In an apparatus of the class described, an elongated main supporting member fixedly sustained at its ends, a plurality of longitudinally-movable auxiliary members supported by and below the main member, each auxiliary member having attached to it at its inner end, and intermediately of its length, respectively, upturned brackets to engage and travel upon the member next above it, and means carried by each of said end brackets to counteract upward thrust of the adjacent end of its attached member, said auxiliary members being longitudinally movable relative to the main member and to each other. 3. In an apparatus of the class described, a main supporting-rod or tube fixedly sustained at its ends, a plurality of longitudinally-movable auxiliary rods or tubes supported by and below the main rod, each auxiliary rod or tube having attached thereto upturned brackets at its inner end and intermediately of its length, respectively, to engage and travel upon the rod or tube next above it, and means carried by each of said end brackets to counteract upward thrust of the adjacent end of its attached rod and to transmit such thrust to the rod next above it, said auxiliary rods or tubes being longitudinally movable relative to the main rod or tube and to each other."

The plaintiff contends, in effect, that Kennedy was a pioneer in the invention of such extensible garment racks in combination with a wardrobe; that the claims of his reissued patent are to be broadly construed, and cover, with their equivalents, all forms of such extensible racks consisting of a main supporting member fixed in the frame of the wardrobe, with two or more auxiliary members, supported therefrom and from each other, and connected in such manner that the lower member may be extended approximately its entire length beyond the outer end of the fixed supporting member and the front of the wardrobe; and that it is hence infringed by the defendants' device. The defendants insist, upon the other hand, that this reissued patent is entirely invalid because unauthorized by the statutory provisions in reference to the reissue of patents; that, independently of this, Kennedy's invention was not of a pioneer character or entitled to a broad range of equivalents; that, further, by reason of the proceedings had in the patent office under his application for his original patent he is limited, whatever may have been the original scope of his invention, to the specific structure disclosed in the original application, in which the horizontal members of the extensible rack consisted of three cylindrical rods or tubes, extending wholly outside of each other, and connected by exterior carrier-brackets, provided with rollers coming in contact with the outer surface of the rods or tubes and serving as a means both of connection and of extension; and, hence, that this reissued patent is not infringed by the defendants' device, in which the horizontal members consist of two hollow casings and a beam projecting inside of the two casings, forming thereby a self-connected structure in which the lower members slide directly upon the upper members, by contact within the interior of the two casings, without the intervention of any exterior carrier-brackets or other connections or contact with any exterior rollers.

Kennedy's application for his original patent was filed June 23, 1898. The principle of the extension, on a telescopic or sliding principle, of the different parallel members of extensible mechanical appliances, with suitable connections and anti-friction bearings, was then old in the arts. This had been shown in the Mahoney patent No. 159,521, on

extension ladders, whose several sections were connected and extended by means of clamps and grooves; in the O'Sullivan patent No. 302,278, on fire-escapes, whose several cylindrical masts were connected and extended by means of guides or collars; in the Newman patent No. 459,-613, on fire-escapes, whose several sections were connected and extended by means of hook-shaped slides; and in the Hobbs patent, No. 509,901, on dental engine-brackets, whose several rods were connected and extended by means of plates arranged with bearing surfaces. Obviously, however, none of these devices were closely analogous to the extensible hanging devices now in question or used in the same or related arts. The Holzhalb patent, No. 356,125, issued January 18, 1887, on clothes-racks for wardrobes, being an attachment to wardrobe-shelves, whereby any garment might readily be reached without disturbing the others, had, however, disclosed a sliding rack or carrier provided for the attachment of garment-holders or hooks, whose flanges slid upon wheels suspended by angle-pieces from a metal piece screwed underneath the wardrobe shelf, and which, with the suspended garments, could be drawn almost entirely outside of the wardrobe. Figure 1 of its drawings, showing a vertical transverse section of this device, is here reproduced:

Kennedy's original specification stated that his invention (in so far as related to the extensible hangers), consisted,

"essentially, of a wardrobe, each section of which is provided with extension tubes or rods, the uppermost of each set being carried by the frame and the lower being suspended by suitable carriers from the upper tube."

Figure 1 of the drawings was a sectional perspective view of a portion of a wardrobe case, showing "the extensible rods" in position in the wardrobe and the door closed; Figure 2, a similar view showing the door of the wardrobe open and "the extensible rods" drawn forth; Figure 3, a sectional plan showing the dividing uprights between two compartments of the wardrobe; and Figure 5, a view of the handle and catch of the wardrobe door.

Figure 4, which was an enlarged view of "the extensible rods," was substantially identical with Figure 3 of the reissued patent, reproduced hereinabove.

This original specification repeatedly described the horizontal members of the extensible hangers as "tubes," but also occasionally used the words "rods" and "tubular members;" neither the broad and unrestricted term "members," nor any equivalent, being, however, used. All of the figures in the drawings showed a cylindrical form of all of the horizontal members, and their connection, one with the other, by means

of exterior carrier brackets, containing rollers upon which they moved when extended; such brackets, with the rollers and stops, being specifically described. However, the original specification contained the following language, immediately preceding the first claim:

"Again, although I describe my garment-support as being tubular in form, it will be, of course, understood that I consider any suitable form of bar or rod in lieu thereof as equivalents."

The original application contained ten claims, the first six of which related to the extensible hangers, the last four, in whole or in part, to a sliding door and lock for the wardrobe. Claim 1, which sufficiently illustrates the first six claims, was as follows:

"1. In a wardrobe, a garment support comprising the main bar having a suitable support at each end, and the supplemental bars, and carrier-brackets connecting the supplemental bars to each other and supporting them upon the main tubular bar, whereby the supplemental bars may be extended lengthwise from underneath the main bar as and for the purpose specified."

In all the other claims, however, the horizontal members of the extensible hangers were described as "tubes," "tubular bars" or "extensible tubes."

The Examiner held that these ten claims covered three independent inventions, and called for a division and limitation of the claims to cover a single invention. Thereupon Kennedy canceled claims 7, 8, 9 and 10. The Examiner then directed that the word "tubular" should be inserted in the first line of claim 1 before the word "bar." He, at the same time, rejected claims 1, 2 and 3, upon reference to the Holzhalb patent, No. 356,125, for wardrobe clothes-rack, above mentioned; and also rejected claims 4, 5 and 6, as covering merely an aggregation of the applicant's particular clothes-hanger and wardrobe.

Kennedy thereupon canceled all of these six rejected claims, and inserted four new claims. Of these, claim 1 was for "the combination, with a wardrobe, of a garment support comprising a member supported horizontally in the upper part thereof, (and) a second member supported by and beneath the first member, and adapted to slide longitudinally in relation thereto;" claim 2, for a similar combination in which the second "member" of the garment support was described as "a corresponding member slidably supported from the first member, with means for supporting the sliding member in a position entirely outside of the wardrobe;" claim 3, for the combination, with a wardrobe, of a fixed "tube" supported horizontally in the upper part thereof, a second "slidable" tube depending therefrom, and a third "tube" depending from the second and extensible beyond the end of the fixed tube; and claim 4, for the combination with a wardrobe of three like "tubes," with brackets and rollers.

The Examiner rejected all four of these claims: claim 1, upon reference to the Holzhalb patent; and claims 2, 3 and 4 upon reference to the Holzhalb patent and the Hobbs patent, No. 509,901, on dental brackets, above mentioned, as involving no invention in multiplying the number of slidable arms used by Holzhalb, especially in view of the Hobbs patent. Kennedy thereupon canceled claims 1 and 2, containing the broad term "member," amended claims 3 and 4 by inserting certain

details, asked a reconsideration for claim 4, and submitted an argument seeking to differentiate his device from the Holzhalb and Hobbs patents.

The Examiner again rejected claims 3 and 4, upon the references and for the reasons of record against them. Kennedy thereupon canceled these claims and inserted two new claims, as follows:

"1. The combination, with the wardrobe, of a tube or rod having fixed supports for the same in the frame of the wardrobe above the level of the door or opening, a second tube depending from the fixed tube and having the outer end free, and supported at the inner end and intermediately of its length by depending brackets from the fixed tube, so that it may be slid out approximately half its length beyond the outer end of the fixed tube, and a third tube depending from the second tube and having its outer end free and supports at its inner end and intermediate of its length connected to the second tube whereby it may be slid out approximately half its length and substantially beyond the end of the fixed tube and front of the wardrobe as specified.   2. The combination, with the wardrobe, of a tube or rod having fixed supports for the same in the frame of the wardrobe above the level of the door or opening, a second tube having a bracket and rollers at the inner end by which it is supported from the fixed tube, and the outer free end provided with the laterally extending stop, a third tube having a bracket secured to the inner end and rollers journaled in the same by which it is supported at the inner end outside the bracket on the second tube and a stop at the outer free end, the intermediate bracket secured to the lowermost tube and having an upward extension and roller supported on the second tube and a further upward extension supported on the fixed tube whereby the tubes are supported in their closed position and supported, braced and held together in their drawn position as specified."

The Examiner then allowed these two claims, and directed that, as the "applicant has elected the invention disclosed in Figures 1 and 4 of the drawing," Figures 2, 3 and 5 and all descriptive matter relating thereto in the specification should be canceled (this direction as to Figure 2, which was the same as Figure 1, except that it showed the wardrobe door open and the hanger extended, being obviously a mere inadvertence). Kennedy thereupon canceled Figures 3 and 5, showing the dividing uprights, handle and catch, and their description, and changed Figure 4, showing "the extensible rods," to Figure 3. He also, although not directed so to do, canceled the three paragraphs of the specification immediately preceding the first claim, the last of which, hereinabove quoted, had contained the statement that while he had described his garment support as being "tubular in form," he considered "any suitable form of bar or rod in lieu thereof as equivalents." In the specification as finally amended, the extensible hanging device, with the tubes or rods, carrier-brackets, rollers and stops of which it was composed, were thus described:

"$F$ is the top tube, which is supported on the back $E$ by the bracket $G$, the end of which extends into the tube, and on the top front board by the bracket $H$, which extends into the tube.  $F^1$ is the tube situated next below the tube $F$, and supported thereon by the carrier-brackets $I$ and $I^1$, which are suitably brazed or otherwise connected to the lower tube $F^1$.  The bracket $I$ is preferably provided with grooved rollers $ii$, journaled therein at the top and bottom of the tube $F$.  The bracket $I^1$ is provided with a single grooved roller $i^1$, resting on the tube $F$.  $F^2$ is the undermost tube, which is provided with carrier-brackets $JJ^1$, suitably secured at the bottom to the tube $F^2$.  The bracket $J$ has journaled in it at the top suitable rollers $j$, which are designed to run

on the tube $F^1$. The bracket $J^1$ has suitably journaled in it at the top the grooved roller $j^1$, which is designed to run upon the tube $F^1$. The end of the tube $F^1$ is provided with a stop-collar and handle $f$, and the end of the tube $F^2$ has secured to it a stop collar $f^1$. It will be noticed on reference to Figure 3 that when the tubes are extended the bracket $I^1$ and roller thereon are stopped by the bracket $II$ and the bracket $J^1$ and roller are stopped by the stop-collar $f$, so that when the tubes are extended out to their fullest extent the tube $F^2$ is practically entirely outside the compartment of the wardrobe altogether. Such tube $F^2$ is designed to receive and hold suitable garment-supporters, from which a number of garments may be hung."

The patent was then allowed; and was issued to Kennedy August 20, 1899, being No. 631,525.

On May 31, 1900, Kennedy filed an application for a reissue of this patent, with an amended specification and claim, upon the ground that the original patent was "inoperative, for the reason that the specification (was) defective, incorrect and ambiguous," particularly in that claim 1 was "ambiguous, uncertain and open to various meanings" and claim 2 was "inoperative, incomplete and inaccurate" in various respects set forth in detail in the application, relating entirely to the meaning of the words used in the claims as affecting the mechanical details of the structure; which "erroneous, improper, ambiguous and misleading errors" rendering the patent "inoperative" had arisen through accident and mistake, without any fraudulent or deceptive intention, and by reason of the applicant's unfamiliarity with patent matters and the errors of his attorneys. This reissue was refused by the Examiner for the reason that the statements in the claims referred to in the application did not render the patent inoperative for the reasons assigned, but were "clear from any ambiguity or uncertainty when read in connection with the specification and drawings." Kennedy then requested a reconsideration of his application, "particularly as to the second claim of the patent," conceding, "for the sake of argument," that the first claim was not inoperative; and asked that if the reissue should be granted as to the second claim it should also be allowed as to the first claim, which had been "more clearly and definitely drawn," and that four additional claims submitted with his application might at the same time be allowed. On reconsideration the Examiner directed the addition of a figure similar to Figure 3 of the drawings, "but showing the rods partly extended;" and allowed all the claims. Kennedy thereupon amended his application so as to incorporate Figure 4, reproduced hereinabove, showing the extensible devices partly extended. The application for the reissue was then allowed; the original patent surrendered; and patent No. 11,907 reissued to him, May 7, 1901.

The description contained in the reissued patent is greatly broadened from that of the original. In the specification of the original patent the extensible hanger is described as consisting of a set of "extension rods or tubes;" in that of the reissued patent, as comprising "a plurality or set of members, preferably tubes or rods." In the specification of the original patent the words "tube" or "rod," in the singular or plural, are invariably used in referring to the horizontal members of the extensible hanger; in that of the reissued patent, these words, or their equivalent, are used only eight times, while the broad term "mem-

ber," unrestricted as to form, is used, in either the singular or the plural, twenty-eight times. And while each of the two claims of the original patent refers only to three "tubes" or "rods," two of the six claims to which they are expanded in the reissued patent, refer broadly to a fixed supporting member and a plurality of movable auxiliary members.

It is clear, in the first place, that Kennedy, by his attorneys, in the proceedings in the patent office under his application for the original patent, in the effort to meet the rulings of the Examiner and to avoid the supposed effect of the prior patents of Holzhalb and Hobbs, deliberately abandoned in his specifications, both in the description and the claims, the use of any broader words than "tube" or "rod," canceling all claims which contained the broad term "member," and limited his claims to an extensible hanging device consisting of "rods" or "tubes," that is, members with a cylindrical outer surface, connected by and sliding upon exterior carrier-brackets, with rollers and stops, as specifically described in his final description and drawings. This deliberate limitation of his claims is emphasized by the fact that, although not so required by the Examiner, he canceled in his final description the statement that he considered any "suitable form of bar or rod" as the equivalent of the "tubular" form of his garment support. The scope of the original patent was, therefore, clearly limited to the specific invention covered by its claims. Keystone Co. v. Phœnix Co., 95 U. S. 274, 276, 278, 24 L. Ed. 344; Railroad Co. v. Mellon, 104 U. S. 112, 118, 26 L. Ed. 639; Corbin Co. v. Eagle Co., 150 U. S. 38, 40, 14 Sup. Ct. 28, 37 L. Ed. 989; Brown v. Stilwell Co. (6th Circ.) 57 Fed. 732, 737, 6 C. C. A. 528; and cases cited.

Having thus deliberately limited the claims of his original patent to the specific form of extensible hanging device, disclosed in the final description and drawings, he was not, in our opinion, entitled to thereafter obtain a reissue of the patent, broadening and enlarging his claims so as to include other forms of the extensible hanging device.

Section 4916 of the Revised Statutes (U. S. Comp. St. 1901, p. 3393), authorizing the reissue of a patent, provides that:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, * * * if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the Commissioner shall, on the surrender of such patent * * * cause a new patent for the same invention, and in accordance with the corrected specification, to be issued * * * for the unexpired part of the term of the original patent. * * * Every patent so reissued * * * shall have the same effect and operation * * * as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification. * * *"

[1-3] Under the liberal construction given to this statute and the earlier statutes from which it is derived,[1] it is well settled that if, by

---

[1] The earlier statutes relating to the reissue of patents are: Act of July 3, 1832, c. 162, § 3, 4 St. 559; Act of July 4, 1836, c. 357, § 13, 5 St. 117, 122; Act of Mar. 3, 1837, c. 45, § 5, 5 St. 191, 192; Act of July 8, 1870, c. 230, § 53, 16 St. 198, 205; Act of Mar. 3, 1871, c. 132, 16 St. 583. These several statutes are cited and the essential differences in their provisions pointed out in Walker on Patents (4th Ed.) § 211, p. 200, et seq. They are also reviewed in Parker Co. v. Yale Co., 123 U. S. 87, 8 Sup. Ct. 38, 31 L. Ed. 100.

reason of inadvertence, accident or mistake, a patentee fails to claim any part or all of the actual invention disclosed in his specification and drawings, and intended or sought to be covered, the patent is to be deemed to such extent "inoperative," and may be lawfully reissued so as to cover the entire invention in its claims. Keystone Co. v. Phœnix Co., 95 U. S. 278, 24 L. Ed. 344; Topliff v. Topliff, 145 U. S. 156, 170, 12 Sup. Ct. 825, 36 L. Ed. 658; Corbin Co. v. Eagle Co., 150 U. S. 42, 14 Sup. Ct. 28, 37 L. Ed. 989; Hobbs v. Beach, 180 U. S. 383, 394, 21 Sup. Ct. 409, 45 L. Ed. 586. However, a reissue

"cannot be permitted to enlarge the claims of the original patent by including matter once intentionally omitted. Acquiescence in the rejection of a claim, its withdrawal by amendment, either to save the application or to escape an interference; the acceptance of a patent containing limitations imposed by the Patent Office, which narrow the scope of the invention as at first described and claimed, are instances of such omission." Dobson v. Lees, 137 U. S. 258, 265, 11 Sup. Ct. 71, 34 L. Ed. 652, and cases cited.

And see Corbin Co. v. Eagle Co., 150 U. S. 43, 14 Sup. Ct. 28, 37 L. Ed. 989; Campbell v. American Co. (6th Circ.) 179 Fed. 498, 502, 103 C. C. A. 122; XXth Century Co. v. Taplin (6th Circ.) 181 Fed. 96, 101, 104 C. C. A. 156. Nor can the deliberate acts of the applicant's attorney in protracted proceedings in the Patent Office leading to the issue of the patent, be treated as the result of inadvertence, accident or mistake. Dobson v. Lees, 137 U. S. 265, 11 Sup. Ct. 71, 34 L. Ed. 652. And in such cases, in determining the validity of the claims of a reissued patent, the court will review the decision of the Patent Office upon the question of inadvertence, accident or mistake, where the matter is manifest from the record. Leggett v. Avery, 101 U. S. 256, 259, 25 L. Ed. 865; Topliff v. Topliff (U. S.) 145 U. S. 171, 12 Sup. Ct. 825, 36 L. Ed. 658; Hobbs v. Beach, 180 U. S. 395, 21 Sup. Ct. 409, 45 L. Ed. 586. Furthermore, regardless of the question as to whether the entire reissued patent is rendered void by the insertion of a new and unauthorized claim, as suggested obiter in Leggett v. Avery, 101 U. S. 259, 25 L. Ed. 865, it is clear that such claim of the reissued patent is itself void and will not sustain a bill for infringement. Leggett v. Avery, 101 U. S. 259, 25 L. Ed. 865; Corbin Co. v. Eagle Co., 150 U. S. 43, 14 Sup. Ct. 28, 37 L. Ed. 989.

[4] Applying these well settled rules to the instant case, we are of the opinion that, since Kennedy, in the proceedings in the Patent Office, by his attorneys, in order to meet the rulings of the Examiner, deliberately canceled his claims relating to a garment support having "members" slidably supported by and beneath each other, limited his claims to the specific structure disclosed in his final description and drawings, in which the extensible hanging device consisted of rods or tubes, connected by and sliding upon exterior carrier-brackets, with rollers and stops, as described, and voluntarily canceled the statement in his description as to other forms of bars or rods as the equivalent of his tubular form, such deliberate limitation of his claims cannot be held to have been due to either inadvertence, accident or mistake; and, hence, that, under the reissue statute and the authorities above cited, there was no warrant for enlarging and broadening the claims of the reissued patent beyond the claims to which the original patent had been

deliberately limited. Furthermore, the application for the reissued patent was not based upon the ground that the original patent was inoperative by reason of the narrowness of its claims, but solely upon alleged ambiguities and uncertainties in the wording of the claims rendering them, in effect, mechanically inoperative. Therefore, under the application itself, there was no warrant for amending the claims of the original patent except in so far as verbal corrections were necessary to make them mechanically operative. And we entirely concur in the opinion of the patent Examiner that there was no such ambiguity in fact in the original claims, when properly construed. For these reasons we therefore conclude that, in so far as the claims of the reissued patent do more than to correct verbal ambiguities in the claims of the original patent, so as to make these claims clear, unambiguous and mechanically operative, they were granted without warrant or authority of law and are to such extent void; and that, even if the reissued patent be not entirely void, a question we do not decide, its claims must be limited in their effect to a mechanically operative extensible hanging device, consisting of extensible rods or tubes connected by and sliding upon exterior carrier-brackets, with rollers and stops of specified construction and uses, substantially as described in the claims of the original patent. And we entirely concur in the opinion of the court below that when the claims of the reissued patent are thus limited in their validity, since the defendant's device neither uses the extensible tubes or rods of Kennedy's original claims nor the exterior carrier-brackets with rollers and stops therein specified, but consists of a structure in which the horizontal members of the extensible device are neither tubes or rods, but two hollow casings and a beam projecting inside of the casings, forming a self-connected structure in which the lower members slide upon the upper by contact with the interior of the upper members, without the intervention of any connecting carrier-brackets or exterior rollers, there is no infringement by the defendants' device of the claims of the Kennedy reissued patent, to the extent, if any, to which they may be valid. We may add that the changes in the first claim effected by the reissued patent do not impress us as important.

It is therefore unnecessary to determine whether, independently of the limited validity of the claims of the reissued patent, as above stated, Kennedy's invention was, in any event, in view of the prior state of the art, especially as disclosed in the Holzhalb patent on an extensible wardrobe garment hanger, of such a pioneer character and entitled to such a broad range of equivalents as to be infringed by the defendants' device.

*Vanderveld Patent.* The application for the Vanderveld patent was filed July 24, 1905; and it was issued July 10, 1906. The specification described his invention as relating to article-supports for wardrobes adapted to be drawn wholly outside of the case, and as consisting

"essentially, in combination and arrangement of stationary ways supported within the case, movable ways mounted therein and adapted to project partially outside the case, and a support movably supported in the movable ways and adapted to be moved wholly outside the case."

Figure 4 of the drawings, showing a side elevation of his device as it appeared when extended, is here reproduced:

*Fig. 4.*

As described and shown in the specifications and drawings, the upper fixed member of the extensible device consists of two connected channel bars spaced apart, with their channeled sides towards each other; the intermediate member, of two smaller connected angle-bars spaced apart, entirely inside the inclosure of the upper member and sliding by means of side rollers upon its lower flanges; and the lower member of a narrow bar, with a garment-hanger rod attached, entirely inside the enclosure of the intermediate member and sliding by means of rollers upon its lower flanges, the suspended garment-hanger projecting below the enclosures of the upper and intermediate members through the slits in the bottom of each formed by the spacing apart of the channel and angle-bars. The patent contains five claims. Claim 1, which is the broadest and sufficiently illustrates these claims, is as follows:

"1. In combination with a case, channel-bars spaced apart and fixed in the case, angle-bars spaced apart and connected and also movably supported between the channel-bars, a bar movably supported between the angle-bars, and an article-support extending downward from the bar and between the angle-bars."

It is earnestly contended in plaintiff's behalf that the two connected channel-bars constituting the upper fixed member of Vanderveld's structure are the equivalent of the hollow casing constituting the upper fixed member of the defendants' device; that the two connected angle-bars constituting the intermediate member of Vanderveld's structure are the equivalent of the hollow casing constituting the lower member of the defendants' device; that the rod constituting the lower member of Vanderveld's structure is the equivalent of the I beam constituting the intermediate member of the defendants' device; that the several members in the defendants' device operate in substantially the same manner as in the Vanderveld structure, except that they are assembled in a different order, with an immaterial reversal of position; and that, under the range of equivalents to which the Vanderveld patent is entitled, it should be held to be infringed by the defendants' device.

This question must, however, be determined in the light of the evidence in the record as to the prior unpatented device, known as the Revell rack. This rack consists of three members, the upper fixed member composed of two connecting channel-bars, spaced apart; the intermediate member, of two smaller connected channel-bars extending within the enclosure of the upper member and sliding by means of side rollers upon the lower flanges of the upper member; and the lower member, of a bar, with a garment-rod attached, extending within the enclosure of the intermediate member and sliding by means of side rollers on its lower flanges.

The model for this rack was first made by A. H. Revell & Co., of Chicago, about 1897; one or two racks were at that time made for May & Co., of Cleveland, Ohio, and installed in their store as an experiment. About twelve other racks were made by Revell & Co. for sale at about the same time; and one was installed in a sample cloak case in their store, where it remained for about two years. Since 1900 these racks have been continuously for sale by Revell & Co., and one or more have been kept made up, which were used as samples to show prospective customers, though their sale was not pushed because of their expensiveness. In 1902 they sold and shipped some of these racks to the Halle Bros. Co., of Cleveland, Ohio; and in 1904 they sold and shipped twenty racks to Koch Bros., of Allentown, Pa., six of which were afterwards returned.

Vanderveld was obviously not a pioneer in the invention of extensible garment-hanging devices for use in connection with wardrobes. The Holzhalb patent, in 1887, showed such a device consisting of two members, the lower of which could be almost entirely extended outside of the wardrobe, while the Kennedy patent, in 1889, disclosed a device consisting of the three members not forming a self-connected and self-sustaining structure, but connected by and sliding upon exterior carrier-brackets and rollers. The Revell rack, however, which had been in actual commercial use for several years before Vanderveld's application was filed, consisted of a structure almost identical in all essential respects with the Vanderveld structure, embodying in a practical form the principle of an extensible hanging device in which the horizontal members consisted, in effect, of two hollow casings, one of which extended inside of the other, and of a rod extending inside of the lower casing, forming thereby a self-connected and self-sustaining structure in which the lower members slide directly upon the upper members by roller contact within their interior, without the intervention of any exterior carrier-brackets or other connections or contact with any exterior rollers.

[5, 6] In this state of the art and in view especially of the Kennedy patent and the prior use of the Revell rack, we are of opinion that Vanderveld's invention did not extend broadly to a self-connected and self-sustaining extensible device in which the lower members slide inside of the upper members, without exterior connections or rollers, but that his claims, if valid at all, by reason of novelty, must be limited substantially to the specific structure therein disclosed, with the respective functions of the several members of the extensible device, or their equivalents, as shown in the specification and drawings; that is to say, to a device in which the fixed upper member consisted of the two channel-bars, spaced apart, the intermediate member of two angle-bars, spaced apart, and the lower member of a bar, and in which the lower members slide upon the upper members by means of rollers within the interior of the upper members, as specifically described. And since Vanderveld's invention was not of a broad and primary character, involving entirely new mechanical functions, but was a secondary improvement marking only a small step in the art and with comparatively small meritoriousness in the improvement over the Revell

rack, its range of equivalents is correspondingly narrow and the doctrine of equivalents should be less liberally applied in his favor. Miller v. Eagle Co., 151 U. S. 86, 14 Sup. Ct. 310, 38 L. Ed. 121; Jackson Co. v. D'Arcy (6th Circ.) 181 Fed. 340, 344, 104 C. C. A. 170. There are clearly, however, essential differences between Vanderveld's structure and the defendants' device, even if, as the plaintiff insists, the hollow casings in the defendants' device are to be treated as the equivalents of the channel-bars and angle-bars of the Vanderveld structure. In the Vanderveld structure the lower casing slides entirely within the upper casing and is self-connected therewith, and the lower member is entirely inside of both of the casings, sliding upon the flanges of the lower casing, and serving no function as a connection between the casings. In the defendants' device, however, the lower casing is entirely outside of the upper casing, and the two casings are connected by the intermediate member, consisting of an I beam whose flanges extend within the interior of both the upper and lower casings and serve as a means of connection. Applying the rule of narrow equivalents to which the Vanderveld claims must be limited, we are clearly of the opinion that, in view of the prior state of the art, especially as disclosed in the Revell rack, the defendants' device is not a mere colorable departure from the Vanderveld structure coming within the range of permissible equivalents, but involves a substantial departure from the specific structure disclosed in the Vanderveld patent to which alone his claims are valid, if at all, and hence does not constitute an infringement. Jackson Co. v. D'Arcy (6th Circ.) 181 Fed. 345, 104 C. C. A. 170, and cases cited.

Without considering the other questions presented by the assignments of error and argument, it results that, in our opinion, for the reasons above stated, there was no error in the decree of the court below dismissing the plaintiff's bill for want of infringement of either of the patents in suit. The same will accordingly be affirmed, with costs.