**LOPULCO SYSTEMS, Inc., et al. v. BONNOT CO. et al.**

Circuit Court of Appeals, Third Circuit. February 21, 1928.

No. 3644.

1. Patents ⬤⟞109—Application to amend application two years later by disclosing different claims, must be carefully scrutinized.

When patentee, two years after his original application, seeks to amend it by disclosing claims of different character, it is court's duty carefully to scrutinize application for amendment.

2. Patents ⬤⟞109—Application disclosing hard short flame furnace held not amendable by claiming long soft flame process of another's successful furnace.

Original application, disclosing process and furnace for burning pulverized coal by hard short flame, impinged on target wall to guide its path, could not be amended two years later by incorporation of slow-burning, long soft flame process, without target wall, embodied in successful furnace described in technical publication before application for amendment.

Appeal from the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Suit by the Bonnot Company and another against the Lopulco Systems, Incorporated, and another. Decree for plaintiffs (15 F. (2d) 848), and defendants appeal. Affirmed.

Ward, Gray & Ward, of Wilmington, Del. (Harvey Lechner, and Paul Synnestvedt, both of Philadelphia, Pa., and Alfred W. Kiddle, of New York City, of counsel), for appellants.

William G. Mahaffy, of Wilmington, Del. (Charles Neave and Maxwell Barus, both of New York City, and Edgar W. McCallister, of Pittsburgh, Pa., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the final analysis, the decisive questions involved in this case are, first, was the invention of the claim disclosed in the original specification? and, second, if not, can the invention of the claim, in use for two years before an amendment disclosing it for the first time, be patented by grafting it onto the original, nondisclosing application?

[1] The duty of careful scrutiny in such cases was referred to by this court in Hestonville v. McDuffee (C. C. A.) 185 F. 802, where it was said: "when, therefore, a patentee, seven years after his original application" —in the instant case two years—"and enlightened by such intervening years of progress, seeks not to prosecute his original application, but to amend the same, and on the basis of such amendment to make claims of a different character from those originally made, it becomes the duty of a court to zealously and jealously scrutinize such belated application." With this in mind we first ascertain: What disclosure did the original application make?

The general subject-matter was thus stated:

"The present invention relates to improvements in furnaces and method of feeding fuel thereto, the present disclosed embodiments of our invention relating particularly to boiler furnaces in which pulverized fuel is burned. It is an object of the invention to provide an improved method of feeding and mixing with air, to the end that the greatest efficiency is obtained from the furnace, and the furnace may be maintained in proper condition with

facility, and without interference with the operation thereof."

The applicant had two things in view: One, rapid fuel combustion, or, as stated, "A further object is to provide an improved feeding means, whereby a more perfect mixture of the fuel and combustion air is afforded, permitting rapid combustion to take place, and to this end we propose in one embodiment of our invention to feed the fuel in separate streams independently embraced by air;" the other, to repair or renew, without suspending operation, the parts of the furnace burned out by the patentee's rapid fuel consumption device. "Heretofore those parts of the furnace which deteriorated rapidly were inaccessible during the operation of the furnace, and it was therefore not possible to repair or renew the same without putting the furnace out of use. It is proposed in the present invention to enable the renewal of these parts while the furnace is in use, and at the same time greatly improve the process of combustion."

By reference to the accompanying figure it will be seen that the patentee's furnace was provided with a "target," or "target wall," which the entering fuel stream struck, and which deflected the same upwardly in U-shape; thus: "The floor 16 of the oven is disposed directly beneath the feed burners, and may be inclined downwardly from the door 17, forming a target and deflecting wall for the products of combustion and fuel impinged thereon, as will be presently pointed out."

_Fig:1._

The patentees state the fuel enters "at a relatively high velocity"; that the fuel is "mixed with sufficient air for combustion and, subjected to the radiant heat from the incandescent target wall 16, burns"; and: "The mixture impinges against the target wall 15, and by reason of the inclination of the said wall is deflected in the direction of the arrows toward the inclined rear wall 19, which guides the same upwardly through the furnace. The target wall is incandescent during operation of the furnace, and causes ignition of the fuel."

That the patentees purpose to use the entire surface of the target wall is evidenced by the employment of certain means "the effect of this being to thoroughly mix the fuel and air and to exert a change in the course of the fuel to the extent that it impinges upon the entire surface of the incandescent target wall." The intense heat of the target wall due to being struck by the jetted fuel stream, the consequent deterioration of such wall, and the method of replacing the same are set forth at length. "The target wall, because of its intense heat and the impingement of the fuel thereon, very rapidly deteriorates, the bricks becoming melted, burnt out, and otherwise affected, so that renewal becomes necessary. Heretofore renewal or repairs of such parts necessitated the putting out of operation and complete cooling of the furnace. According to the present invention, we propose to permit the renewal of the target wall surface during operation of the furnace. To this end, the target wall is disposed laterally adjacent the front wall of the mixing oven or other point at which accessibility may be possible, and by opening the door bricks may be inserted and placed upon the target, all by a suitable tool, or the same may be thrown therein, thereby providing a new surface. Slag and the melted and burnt-out refractory material forming the target wall flow into the base 20 and may be removed through the door 21. By enabling this renewal of the target wall surface at frequent intervals, the furnace may be maintained at its maximum efficiency at all times, without necessitating any loss of time or heating effect."

On this application 10 claims, embodying the disclosure as a whole, have as an element the target wall, from all of which it will be seen that the disclosure was for rapid consumption, and the flame purposely and functionally impinged on a target wall to guide its path, and that the patentees neither disclosed nor claimed anything else. In that respect we agree with the judge below, who, after a full discussion, reference to which obviates repetition on our part, said: "The

original application, as I view it, discloses a process of burning pulverized coal by the hard, short flame only, and a furnace functioning or having a principle of operation suitable to carry out that process. Moreover, it says nothing which to my mind indicates, suggests, or discloses, the long flame process or furnace."

[2] Evidencing the disclosure and its worth, we note the fact that the only furnace embodying this disclosure was one built in 1918 at Milwaukee. It proved a failure. The alleged infringers use a system in which, instead of the intensely hot short flame jetting against a target wall, with consequent rapid combustion, there is a slow-burning, long, soft flame, with no target wall impingement and resultant rapid combustion. A furnace embodying the alleged infringing features was in public use at the power plant supplying the Phipps office building at Pittsburgh, and was fully described in "Power," a technical publication, in its issue of February 14, 1911. Whether instructed by this use and publication or by other sources, the unsuccessful Milwaukee furnace was so changed as to operate in the same way as that now employed by the alleged infringers. This operative and functional change in the unsuccessful furnace of the original application doubtless led to a corresponding patent change by way of amendment, or as aptly stated by the court below as follows (15 F. (2d) 848):

"The reason for the appearance of the new matter set out in the amendment to the original application and in the application for the process patent is found in the failure of a furnace built and operated early in 1918, in conformity with the principle and process of the original disclosure, by the defendant at the Oneida Street station of the United Electric Light & Power Company at Milwaukee, and in the subsequent alteration of that furnace so as to embody the principle of the present claims of the apparatus patent, and to operate in accordance with the steps of the present claims of the process patent. When so altered and operated, it was a success."

Under the decisions (Hestonville v. McDuffee, supra; Railway Co. v. Sayles, 97 U. S. 563, 24 L. Ed. 1053; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 43, 14 S. Ct. 28, 37 L. Ed. 989), such procedure cannot succeed. In view of the full and satisfactory discussion of the details of the case in the extended opinion of the court below, we refrain from further repetition, and affirm the decree entered below.