SPECIALTY MACH. CO. v. ASHCROFT MFG. CO.

(District Court, S. D. New York. March 19, 1913.)

1. PATENTS (§ 22*)—INVENTION—SUBSTITUTION OF EQUIVALENTS.
   To substitute one kind of well-known gearing for another in a valve reseating tool would not involve invention, even though better results and more uniform grinding are obtained.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*]

2. PATENTS (§ 142*)—REISSUE—CLAIMS ABANDONED IN ORIGINAL PROCEEDINGS.
   The voluntary cancellation of a claim in the original application for a patent calling for positive driving means as an element of a combination is an abandonment of such element, and a claim for continuously acting positive means cannot be made the basis and principal feature of a reissue, nor can it be claimed that such feature was omitted from the original patent by inadvertence, accident, or mistake.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 214; Dec. Dig. § 142.*]

**3. Patents (§ 138\*)—Validity of Reissue—Laches.**

In the absence of special circumstances, a reissue should not be granted after a delay of nearly three years, and the rule should be strictly enforced, when, during the delay, other inventors have taken out new patents in the same art, which would infringe the reissue.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 201–203; Dec. Dig. § 138.\*]

**4. Patents (§ 328\*)—Validity of Reissue—Machine for Reseating Valves.**

The Hazeltine reissue patent, No. 13,421 (original No. 918,049), for a machine for reseating valves, is void because of the absence of statutory ground for a reissue and also because of delay in applying therefor.

In Equity. Suit by the Specialty Machine Company against the Ashcroft Manufacturing Company. On final hearing. Decree for defendant.

Herbert G. Ogden, of New York City, for complainant.

Rogers, Kennedy & Campbell, of New York City (Odin Roberts, of counsel), for defendant.

HOLT, District Judge. This suit is brought to enjoin the alleged infringement of reissued patent 13,421, granted to Robert H. Hazeltine. On March 26, 1907, Hazeltine filed an application for a patent for a machine for reseating valves. On March 23, 1908, while his first application was pending, he filed another application, which stated that it was for the same invention as his co-pending application filed March 26, 1907, with additional features and improvements. On April 13, 1909, two patents were issued to Hazeltine on his two applications, one numbered 918,049, and the other 918,050. On February 7, 1912, Hazeltine surrendered his patent 918,049, and applied for a reissue, which was granted on May 21, 1912. Upon this reissued patent this suit is brought; the complainant claiming infringement of claims 8, 9, and 10.

The machine patented is a machine for reseating valves, and is used particularly for grinding and reseating automobile valves. Valves and cocks for preventing the passage of water, gas, or steam must, of course, fit tightly. When they leak, the two parts must be ground down so as to fit exactly. That was originally done by hand. Emery or some abrading substance was applied to the valve, and the valve revolved in its seat. If the revolution of the valve was continuous, it was found that the valve would be ground unevenly, and it was always the practice in grinding valves to do it with a reciprocating motion, turning them first a certain distance in one direction, and then back. It was also found that, if the two distances were equal, there was a liability to create a ridge or shoulder on the valve or its seat. So that the practice in grinding valves by hand was to move the valve back and forth a few times, then turn it a little in its seat, and then renew the grinding. Machines were long ago devised to do this work based on the idea of having a cylinder, the end of which ground the valve, placed between two revolving disks, each of which had on the interior mutilated cogs or frictional surfaces, so arranged that the cogs or frictional surfaces would alternately engage the cylinder. By this

method a continuous rotation given the disk imparted a reciprocating motion to the cylinder. The fundamental idea is clearly shown in the patent to Millingar, which states that either cog gearing or friction wheel can be used. This device gave the reciprocating motion, and by making some of the mutilated cogs or friction wheels of unequal length the result was obtained of having the point at which the grinding began moved forward at each complete revolution of the disks. This result is shown in the patents to Taylor, Chadwick, Porteous, and Hayden.

Claims 8, 9, and 10 of the original patent are as follows:

"8. A machine for reseating valves, comprising means for reciprocating the valve, and means for periodically rotating the valve through a greater arc in one direction than in the other direction, thereby progressively advancing the valve on its seat.

"9. In a machine for reseating valves, the combination of means for imparting a reciprocating rotary motion to the valves, and means for periodically advancing the valve through a greater arc in one direction than in the opposite direction, thereby progressively rotating the valve on its seat.

"10. In a machine for reseating valves, the combination of means for alternately rotating the valve in opposite directions on its seat, and means for periodically advancing the valve in one direction, thereby progressively changing the position of the valve relative to its seat."

These claims are substantially similar, and, in my opinion, were invalid, being anticipated by the patents before cited.

On July 12, 1910, a patent was granted to Blanchard for a valve grinder under which the defendant's valve grinder, alleged to infringe, is made. The defendant began manufacturing and selling its valve grinder in September, 1910. In that month Hazeltine, the complainant's predecessor in title, notified the defendant that its valve grinder infringed his patents 918,049 and 918,050. In October, 1910, the defendant's attorneys notified Hazeltine and his attorney that in their opinion none of the claims of patent 918,049 were infringed, except claims 8, 9, and 10, and that those claims were invalid. The defendant thereupon continued making and selling its alleged infringing valve grinder. In December, 1911, Hazeltine repeated his former notice of infringement, and the defendant's attorneys again replied denying liability. On February 7, 1912, about two years and ten months after the grant of patent 918,049, and about one year and five months after Hazeltine first gave notice of his claim of infringement, Hazeltine applied for a reissue of 918,049, which was granted May 21, 1912.

In the reissued patent claims 8, 9, and 10 are as follows:

"8. In a machine for reseating valves, comprising continuously acting positive means for reciprocating the valve, including positive means for rotating the valve periodically through a greater arc in one direction than in the other direction during rotation, thereby positively advancing the valve progressively on its seat.

"9. A machine for reseating valves, comprising continuously acting positive means for imparting a reciprocating rotary motion to the valve, including positive means for advancing the valve periodically through a greater arc in one direction than in the opposite direction during reciprocation, thereby positively rotating the valve progressively on its seat.

"10. A machine for reseating valves, comprising continuously acting positive means for alternately rotating the valve in opposite directions on its seat, including positive means for advancing the valve periodically in one

direction during rotation, thereby positively changing the position of the valve progressively relatively to its seat."

[1] The substantial difference between these claims 8, 9, and 10 in the original patent and in the reissued patent is that the means for reciprocating the valve are asserted to be continuously acting positive means, and that the means for rotating the valve are asserted to be positive means. The claim, as I understand it, is that a cog gearing, which is used in the Hazeltine patent, communicates a continuously acting and positive force, while a friction wheel is said to be subject to slip, and does not produce a continuously acting or positive force. Some of the prior patents used friction wheels and other cog gearing, and some stated that either could be used. The fact that Hazeltine's patent showed the use of cog gearing seems to me unimportant. In my opinion, as was stated by the Examiner in the Patent Office in his first rejection of the application for 918,049, to substitute one kind of well-known gearing for another would not involve invention.

[2] Moreover, I see no proof that the omission to claim the use of a positive and continuously acting force in the original patent was the result of inadvertence, accident, or mistake. In the course of the long correspondence which took place after the first rejection of the application for patent 918,049, no suggestion was made that the essence of the invention consisted in the use of a positive force. Various new claims were proposed, some of which were rejected and canceled. One of these canceled claims was as follows:

"22. A machine for reseating valves, comprising means for reciprocating the valve and *positive* means for periodically advancing the valve in one direction through a predetermined distance."

This was the only claim made originally for a positive force, and. when rejected, the applicant acquiesced in its rejection and canceled it. But in the specifications of the reissued patent great stress is laid on the positive and continuously acting devices and means in the applicant's grinder for reciprocating, rotating, and advancing the valve. I cannot see why, under well-settled rules, the voluntary cancellation of such a claim once made for such positive means does not amount to an abandonment. Union Metallic Cartridge Co. v. U. S. Cartridge Co., 112 U. S. 624, 5 Sup. Ct. 475, 28 L. Ed. 828; Yale Lock Co. v. Berkshire Bank, 135 U. S. 342, 10 Sup. Ct. 884, 34 L. Ed. 168. It certainly shows that its omission in the original patent was not due to inadvertence, accident, or mistake.

[3] Moreover, it seems to me that the right to a reissue was lost by lapse of time. It has been held that, in the absence of special circumstances, a reissue should not be granted after a delay of more than two years. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. This rule is strictly followed, when, during the delay, other inventors have taken out new patents in the same art, which would infringe the reissue. James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Moffitt v. Rogers, 106 U. S. 423, 1 Sup. Ct. 70, 27 L. Ed. 76. [4] In this case nearly three years passed after the grant of the original patent before

the reissue was applied for. Meanwhile the Blanchard patent, under which the defendant manufactures, was granted, and various other patents for valve grinders were issued. The defendant presumably developed its business in reliance on its counsel's advice that it was not infringing the original Hazeltine patent. Hazeltine gave formal notice of his claim of infringement, but did not sue until about a year and a half later. After waiting nearly three years after the original patent was issued, he obtained a reissue, and then sued on the reissued patent. I think the reissue was obtained, not to correct any mistake, but in an attempt to create a basis for a suit, which could not be maintained under the original patent.

My conclusion is that the bill should be dismissed, with costs.