ROBERT et al. v. KREMENTZ.

(District Court, D. New Jersey. April 29, 1916.)

1. PATENTS ⬤➾328—VALIDITY OF REISSUE—MATCH BOX.
    The Dodge reissue patent, No. 12,290 (original No. 749,539), for a match-
    box, claims 5 and 10, which were added in the reissue, are void, as broad-
    ening the claims of the original patent by the omission of limitations im-
    posed by the Patent Office and acquiesced in by the patentee.

2. PATENTS ⬤➾141—REISSUES—BROADENING OF CLAIMS.
    A reissue cannot embrace a claim presented on the application for
    the original patent and rejected, the omission of which could not have
    been the result of inadvertence, accident, or mistake.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec.
    Dig. ⬤➾141.]

In Equity. Suit by Samuel Robert, trading as the A. R. T. Manu-
facturing Company, and Harold A. Dodge, against George Krementz,
trading as Krementz & Co. On final hearing. Decree for defend-
ant.

James H. Griffin, of New York City, for complainants.
Seward Davis, of New York City, for defendant.

RELLSTAB, District Judge. Samuel Robert is the exclusive li-
censee, and Harold A. Dodge is the grantee, of United States letters
patent, reissue No. 12,290 (applied for March 8, 1904), dated Novem-
ber 29, 1904, for improvement in match-boxes. The original patent,
No. 749,539, is dated January 12, 1904. The alleged invention is a
match-box for holding book matches, provided with a cover pivoted
at one end of the box, which cover, when in a closed position, is
adapted to cover the entire front of the box and completely con-
ceal the matches contained therein, a match-engaging means at one
end of the box, arranged to partly overlie and retain a package of
matches within the box, and when the box is uncovered to per-
mit the detaching of individual matches from the package and
their engagement on the friction surface of the package, for the pur-
pose of conveniently igniting the matches, without displacing the
package.

[1] The bill charges infringement only of claims 5 and 10 of the
reissue. These read as follows:

    "5. A match-box having a solid back, a turned-up end member rigid there-
    with, two side members also rigid with said back, substantially the entire
    front of said box being open, a match-retaining and engaging flange arranged

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

near one end of the box to hold a package of matches exposed to view through the open front, and a cover pivoted to the box and arranged to cover the open front."

"10. A match-box provided with a back and end member and two side members rigid and integral with said back, substantially the entire front of said box being open, a cover hinged near one end of the box, and means near the end of the box opposite the cover-hinge for engaging and retaining a comb of matches, whereby the entire comb of matches is exposed when the cover is opened and individual matches may be detached without disturbing the comb."

Confining our consideration to these claims and the boxes, "Complainants' Exhibit Complainants' Match-Box" and "Complainants' Exhibit Defendant's Match-box," one is forced to the conclusion that defendant's box is an infringement of said claims, if they are valid and entitled to a reasonable range of equivalents. Save for the fact that complainants' box is wedge-shaped—deeper at the hinged end than at the opposite end where the retaining element is found—defendant's box is substantially a duplicate. Claims 5 and 10 make no reference to this wedge-shaped form, nor to the fact that the hinged end has a greater depth, these claims differing in that respect from all the others save claim 1 of the reissue. The patentee is evidently not limited to the wedge-shaped form of construction. In his original application, as well as in the reissue, he says, with reference to this feature:

"The said pieces or lips $b$ are preferably tapered so as to be somewhat wider at their ends adjacent to the part of the box to which the lid $g$ is hinged than at their opposite ends."

The use of the word "preferably" indicates that he did not consider that such wedge shape was essential, but that he considered some other form of construction might be used.

Claims 5 and 10 are not limited to a holding-piece having its central portion cut away to provide an opening through which the matches may be ignited, as is shown in the drawings, which limitation is found only in claims 1 and 2 of the reissue, these latter claims being in this respect substantially the same as claims 1 and 2 of the original patent. The validity of this reissue is challenged on the file wrapper, and a consideration of such wrapper is necessary to determine that question.

The original application, as well as the grant of letters, had but two claims, which as originally presented read as follows:

"1. A match-box comprising a back, having turned-up lips to afford side and end portions for the body of the box, and having, integral with the end portions, a turned over holding-piece adapted to partly overlie a package of matches, and which holding-piece is provided with an opening through which the matches may be ignited on the friction material of the package, said box being provided with a suitable lid.

"2. A match-box provided with a hinged lid at one end and being formed deeper at the end where the lid is hinged than at its opposite end, so as to be adapted to hold a package of paper matches, and the said box having, at its end opposite the hinge of the lid, a holding-piece, as $d$, adapted to partly overlie a package of matches contained by the box."

On rejection these were amended as presently noted. No change was made in the descriptive parts of the specification or in the drawings to meet the reasons for such rejection. For the purpose of not-

ing the differences between claim 1 as presented in the original application and as actually allowed, these claims will be combined; the parts of the claim as presented which were omitted from the grant will be bracketed and the new parts italicized. It is as follows:

"1. A match-box comprising a back[,] having turned-up lips to afford side and end portions for the body of the box, and having, integral with the end portion, a turned over holding-piece adapted to partly overlie a package of matches [and which holding-piece is provided with an opening], *said holding-piece having its central portion open to provide an aperture* through which the matches may be ignited on the friction material of the package, *and* said box being provided with a suitable *hinged* lid."

These changes relate only to the holding-piece and the lid, but they narrow the claim. Under the statute (R. S. § 4888 [Comp. St. 1913, § 9432]), the applicant for a patent must so clearly and exactly describe his invention that any person skilled in the pertinent art may be enabled to reproduce the same. The disclosure of the specification did not point to as broad an invention as embodied in claim 1 as originally presented, and the examiner rejected it as too broad in view of the cited art.

Claim 2 as originally presented was amended by adding thereto the following:

"Said holding-piece having its central portion cut away to provide an opening through which the matches may be ignited on the friction material of the package."

The "holding-piece" is an essential element of the alleged invention. It was the storm center of the opposition against the alleged invention while the original application was before the examiner. In his specification the applicant said that his invention had "for its object to provide a match-box more especially adapted for the reception of small packages of safety matches made of cardboard," and in describing his box he said:

"The body of the box comprises a back portion *a*, turned-up side lips *b*, a turned-up end lip *c*, integral with which latter is a holding-piece *d*, turned over, so as to partly overlie the package of matches *e*, and which holding-piece *d* may be provided with an inturned lip *f* arranged to engage a cardboard portion *e'*, forming part of the match-package and which package is in practice provided with friction material suitable for scratching matches thereon for the purpose of igniting them. To permit of convenient access to this friction material, the holding-piece *d* is provided with an opening *d'*." Page 1, lines 37–50.

"The turned-over holding-piece *d* is not attached at the sides of the box and is sufficiently flexible so that the packages of matches may be readily inserted beneath the same, and in breaking off the paper matches the said holding-piece may be pressed by the thumb of the user against the matches and will thus serve as a breaker against which the matches may be pulled in removing them separately from the package." Page 1, lines 71–80.

This holding-piece serves three distinct purposes: (a) Holding in place the package of matches; (b) permitting a breaking away of the individual match from its fellows in the package; and (c) permitting ready access to the friction material on said package to ignite the matches. Following this particular description of his holding-piece the patentee said:

"From the foregoing it will be understood that the invention provides a cheap and convenient match-box suitable for advertising purposes and adapted for the reception of packages of paper matches such as are now extensively in use, and also provides convenient means whereby the matches may be removed separately from the packages and readily and conveniently ignited on the usual friction surfaces of the packages through the opening in the holding-piece *d*." Page 1, lines 81–91.

The reference *d* points only to that part of the drawings which pictures the "holding-piece," and the reference *d'* indicates only the cut-out central opening in such "holding-piece" through which the individual matches, after being separated from the package, might be ignited on the friction surface of the package retained in the box by said "holding-piece." From such disclosure it follows that the "holding-piece" thus described has its center portion cut out, and that, though integral with one end of the match box, it is flexible, because unattached to the sides of the box. Claim 1 as presented, however, was not so limited in terms. It covered a holding-piece, either flexible or inflexible, and with any kind of opening, without limitation as to location. On rejection this claim was amended, as before noted. With respect to the opening in the holding-piece, the change brought the claim within the recited limitation which is disclosed in the specification and drawings. That the patentee clearly understood that the amendment with respect to the holding-piece introduced an additional limitation is manifest from his written argument, under date of November 5, 1903, after such amendment had been made and the claims again rejected. This argument (in a letter to the Commissioner of Patents) reads:

"Sir: I have the honor to request a reconsideration of the above-named case. As explained to the examiner at a personal interview to-day, none of the references cited shows any part corresponding to applicant's holding-piece *d*, so located and of such a length as to partly overlie a package of matches so that it is adapted to serve as a breaker which is pressed against the paper matches by the thumb of the user when it is desired to remove such a match from the package, and which holding-piece is provided with an opening through which the matches may be ignited on the ordinary friction material of the package. The function of this novel feature of applicant's match-box is clearly set forth in the second paragraph of page 3 of his specification, and it is therefore hoped that on further consideration of the case the application will be allowed.

"Respectfully,       Henry Calver, Attorney.
"Washington, D. C., Nov. 5, 1903."

Paragraph 2, page 3, therein referred to, is the one heretofore quoted, describing the holding-piece as not attached to the sides, with resultant flexibility and adaptability to serve as a breaker of matches. Whether upon an attack of this claim as originally presented, as not distinctly claiming his disclosed invention, it could be saved by confining it to the specific holding-piece described and illustrated, is not necessary to determine upon the issue now considered, as it was amended to conform to such disclosure. Claim 2 as originally presented perhaps was not faulty in respect to the holding-piece, as its references *d* and *d'* limited it to the kind of retaining means disclosed in the specification and drawings.

But the amendment thereto avoided all question in this respect, for as

noted it specifically limited such holding-piece to one "having its central portion cut away" as disclosed in said specification and drawings.

*As to the reissue:* Power to grant reissue patents is controlled by section 4916, R. S. (Comp. St. 1913, § 9461), which authorizes the issue of "a new patent for the same invention, and in accordance with the corrected specification," whenever the original patent "is inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention. * * *" There is no basis for a reissue on the ground that the claims covered more than the patentee was entitled to, and no such contention is made in this suit. The only ground, therefore, upon which to grant this reissue, was that the original was "inoperative or invalid, by reason of a defective or insufficient specification."

There is nothing in the specification of the original patent that suggests that the patent granted therein was inoperative or invalid by reason of any defect or insufficiency of said specification. The patented device is a simple affair and is correctly described in the specification and fully illustrated in the drawings. The claims as then allowed conformed fully to the alleged invention described in the specification and pictured in the drawings. On its face, the patent which was granted could not be held inoperative or invalid by reason of defective or insufficient specification. In the specification of the reissue patent some slight changes in phraseology were made, and a few new paragraphs were added; but none of these made any substantial change in the specification of the original patent as regards the "holding-piece," and they added nothing in the way of clarification to such earlier specification.

The oath accompanying the application for a reissue is illuminative of the mental attitude of the applicant toward the patent as granted, and of why a reissue was desired. In such oath, dated February 27, 1904, he states that he believes the original patent is—

"inoperative or invalid for the reason that the specification thereof is defective and insufficient and that such defect and insufficiency consists particularly in the failure of said specification to properly describe the function and advantages of my novel construction of match-box, and more especially the function and advantages of having one end of said box larger than the other, and in so arranging the match-retaining means and cover for said box as to permit of the matches being readily taken out of the box upon the opening of the cover, and without disturbing the base strip, and also the function and advantages of the open face of said box, and the capability of the box for re-use for new combs or packages."

None of these alleged defects existed in the original specification. He also stated in such oath that:

"Said specification is further defective and insufficient in that it fails to adequately claim the invention forming the subject-matter of the newly appended claims 3, 4, 5, 6, 7, 8, 9, and 10, which form part of my original invention" and "that the errors which render said patent inoperative or invalid arose from inadvertence, accident, or mistake, without any fraudulent or deceptive intention, and that such inadvertence, accident, or mistake arose

from deponent's failure to fully grasp the nature, scope, and extent of his invention and the importance of the same."

Of the particulars named by him, all save the one which related to the newly appended claims 3 to 10, inclusive, were properly described and illustrated in the original specification and drawings. As already stated, the newly added matters of the specification in no way aided in a better understanding of the invention as described in such original specification. The advantage of having one end of the box larger or deeper than the other, of having the retaining means and cover for the match-box so as to permit the matches to be readily taken from the box upon the opening of the cover, without disturbing or displacing the base-strip, of the open face of such box, and of the capability of the box for re-use of new combs or packages of matches, were all either clearly and fully described or were obvious to any one skilled (if any skill was needed) in that particular art. The last specified defect, viz., that the original patent failed "to adequately claim the invention forming the subject-matter of the newly appended claims 3 to 10, inclusive," would seem to be the one that induced the application for a reissue. At any rate, I am of the opinion that no reissue would have been necessary to correct any alleged defect or insufficiency of the specification to protect the invention distinctly pointed out in the claims. That the controlling purpose of the reissue was to secure enlarged claims is evidenced by the argument addressed by the patentee's counsel to the Commissioner of Patents to overcome the examiner's rejection of these newly added claims. In summing up this argument (June 20, 1904) he says:

"First. The claims numbered 3 to 10 were never embodied in the original case, even by suggestion. * * *

"Third. Applicant was clearly and undoubtedly entitled to these claims in his original case, and they should have been embodied therein.

"Fourth. The claims originally in the case (patented) or as amended were not sufficient to cover and include the structures set forth in claims 3 to 10 under discussion.

"Fifth. The reissue application was filed for the purpose of obtaining for applicant adequate protection on these novel features and the claims are such as are clearly within the provisions of the reissue law.

"In conclusion, it would appear that each and every one of these claims is allowable, even considering the examiner's position to be correct as concerns the original claims.

"For instance, if a party had a claim rejected which covered a box and match-retaining means, broadly, this would not prevent him claiming the match-retaining means just as broadly, provided he included an additional, new element, such as a pivoted cover. Now, applicant has gone a step further: He has selected something more than a retaining means; he has included a retaining and *engaging* means in combination with a number of novel structural features which were never mentioned in the original or amended claims of the first case."

The following arrangement of the several elements of claim 1 of the original as filed and as allowed (it not being necessary to analyze claim 2, as it is limited to a wedge shaped box), and of claims 5 and 10 of reissue, set up in parallel columns, will be helpful in making the comparison of these elements necessary to a determination of whether any material canceled elements of the claims as originally presented appear in the claims here alleged to be infringed:

232 F.—56

| Claim 1 of Original Application as Filed. | Claim 1 of Original as Allowed. | Claim 5 of Reissue. | Claim 10 of Reissue. |
|---|---|---|---|
| A match-box comprising | A match-box comprising | A match-box having | A match-box provided with |
| (1) a back, having turned-up lips to afford | (1) a back, having turned-up lips to afford | (1) a solid back, | (1) a back and |
| (2) side and | (2) side and | (3) a turned-up end member rigid therewith, | (3) end member and |
| (3) end portions for the body of the box, and having, integral with the end portion, | (3) end portions for the body of the box, and having, integral with the end portion, | (2) two side members also rigid with said back, substantially the entire front of said box being open, | (2) two side members rigid and integral with said back, substantially the entire front of said box being open, |
| (4) a turned-over holding-piece adapted to partly overlie a package of matches, and which holding-piece is provided with an opening through which the matches may be ignited on the friction material of the package, said box being provided with | (4) a turned-over holding-piece adapted to partly overlie a package of matches, said holding-piece having its central portion open to provide an aperture through which the matches may be ignited on the friction material of the package, and said box being provided with | (4) a match-retaining and engaging flange arranged near one end of the box to hold a package of matches exposed to view through the open front, and | (5) a cover hinged near one end of the box, and |
| (5) a suitable lid. | (5) a suitable hinged lid. | (5) a cover pivoted to the box and arranged to cover the open front. | (4) means near the end of the box opposite the cover hinge for engaging and retaining a comb of matches whereby the entire comb of matches is exposed when the cover is opened and individual matches may be detached without disturbing the comb. |

From this comparison it will be seen that, with respect to the holding-piece element, claims 5 and 10 of the reissue and claim 1 as presented in the original application are substantially the same, but that, with respect to such element said claims 5 and 10 are broader than claim 1 as originally allowed and restated in the reissue.

The patentee, however, insists that, even if these claims are broader in respect to the holding-piece, yet inasmuch as new elements—"novel structural features which were never mentioned in the original or amended claims of the first case"—were added to these claims, he is entitled to such enlarged retaining means. The added novel structural features here referred to are italicized as follows:

(1) That the back is *solid;*
(2) That the end and side members are *rigid* with the back;
(3) That the *entire front* of the box is open;
(4) An *engaging* flange *near* one end of the box;
(5) And arranged to *cover the open front.*

None of these features was distinctly claimed. The *solidity* of the back, the *rigidity* of the end and side members, the *openness of the front,* the *nearness* of the *flange* (retaining means) to one end of the box, and its (or the lid's) adaptability *to cover the open front,* were all parts of the described and disclosed device sought to be patented. Surely the "solidity," "rigidity," and "openness" in relation to the object sought, and the depicted means whereby such object was to be attained, were not new; and, if not novel, they had no proper place in the claim. Furthermore, if all these alleged novel features, thus disclosed, were not available for the protection of the allowed claims, they must be held as either dedicated to public use or impliedly disclaimed. It is certain that they cannot be said to have been omitted from the claims by "inadvertence, accident or mistake." If this method of broadening the claim is valid, the effect is to nullify the rejection by the Patent Office without resort to the statutory method of correcting such action (Rev. St. §§ 4909–4911 [Comp. St. 1913, §§ 9454–9455]), and to overcome the deliberate and intentional acquiescence in such rejection by the patentee when his original application was pending in the Patent Office. But this, under the authorities, cannot be done.

Nothing but a clear mistake or inadvertence, and a speedy application for its correction, will authorize the enlargement of a claim. The mistake must be actual, not a mere error of judgment (for that may be rectified by appeal)—a real bona fide mistake inadvertently committed, such as a court of chancery, in cases within its ordinary jurisdiction would correct. Miller v. The Brass Co., 104 U. S. 350, 26 L. Ed. 783.

[2] A reissue cannot embrace a claim presented on the application for the original patent and rejected. The omission of such claim from the original patent "was not, and could not have been, the result of inadvertence, accident, or mistake, but was the result of design on the part of the Commissioner and acquiescence on the part of the patentee." Mahn v. Harwood, 112 U. S. 354, 359, 5 Sup. Ct. 174, 177 (28 L. Ed. 665). See, also, Corbin Cabinet Lock Co. v. Eagle Lock Co.,

884       232 FEDERAL REPORTER

150 U. S. 38, 14 Sup. Ct. 28, 37 L. Ed. 989; Toledo Computing Scale Co. v. Moneyweight Scale Co. (C. C.) 178 F. 557, 562; Boland v. Thompson (C. C.) 26 F. 633; Chicago Ry. Equipment Co. et al. v. Perry Side Bearing Co. et al. (C. C.) 170 F. 968; Specialty Mach. Co. v. Ashcroft Mfg. Co. (D. C.) 205 F. 760; Grand Rapids Show Case Co. v. Baker et al., 216 F. 341, 350, 352, 132 C. C. A. 485.

The question under consideration does not present the broad one of power to enlarge inadequate claims by a reissue, but the more limited one of overcoming by a reissue the error of acquiescing in the Commissioner of Patents' decision that the patentee was entitled only to a narrower claim. The cases cited by complainants' counsel do not touch the latter question.

The patent as originally granted was not inoperative. Nor was it invalid by reason of defective or insufficient specifications, nor because its claims were too broad. Upon the examiner's refusal to allow broad claims, the applicant was confronted with the alternative of appealing from or acquiescing in such decision. Having yielded, he is bound by it.

The defendant is entitled to a decree dismissing the bill.