## G–H RIM CO. v. FIRESTONE STEEL PRODUCTS CO.

Circuit Court of Appeals, Sixth Circuit. November 17, 1928.

No. 4986.

Drury W. Cooper, of New York City (Allan C. Bakewell, of New York City, and William B. Cockley, of Cleveland, Ohio, on the brief), for appellant.

Albert L. Ely, of Akron, Ohio, and F. O. Richey, of Cleveland, Ohio, for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. Infringement suit upon reissue No. 15,533, dated January 30, 1923, granted originally to Atkins, for "Rim Structure." The District Court held the reissue invalid, and dismissed the bill.

The only question requiring consideration is whether the patentee, in his original application, so abandoned the broader aspect of his reissued patent as to make the reissue a forbidden recapture, and as to make clear that the original acceptance of the narrower claim was not inadvertence, accident, or mistake. Grand Rapids Co. v. Baker (C. C.

A. 6) 216 F. 341, 351. The patent relates to rim structures for automobile tires, of the construction appearing by this figure: The

tire upon the outer side is held in place by a demountable, split, contractile ring (5), the radially outer (upper) portion of which serves as a tire retaining flange and the radially inner portion (6) of which consists essentially of a flange inclined obliquely to fit the corresponding flange-receiving channel (9) provided at the outer edge of the rim, which channel extends from the rim edge radially inwardly (down) and axially outwardly (left). In the form shown in the patent drawings, this flange carries on opposite sides annular shoulders (15, 18), and the construction is such that the flange fits tightly in the channel, and the shoulders engage with, and overhang, the side edges of the channel. The original application, after formal amendments, presented fifteen claims. Of these about half were carefully limited to structures in which the flange carried both of these opposite shoulders—each contacting with the corresponding channel edges—a two-edge contact; the other half, either plainly or probably, called only for one such shoulder, and would be infringed, if the flange were in contact with the side and top of the channel at either channel corner—a one-edge contact. All the claims were rejected, upon reference to somewhat analogous, but perhaps distinguishable, structures, some of which showed a two-edge contact and one or more of which seemed to show a one-edge contact. Thereupon the claims were amended and the patent taken out, with a limitation in each claim to the two-edge bearing.

Original claim 9 thus abandoned and claim 6 of the reissue are accepted by both counsel as typical upon the critical question. They are quoted in the margin.[1]

[1] "9. A rim structure including an annular base member formed along one side with an upturned flange and at the other side with a depending portion provided with an annular ring-receiving channel disposed at an angle oblique to the plane of the base member, and a ring separably associated with and seatable at an angle in the channel and formed at one side with

The question, stated most favorably to the reissue, must be whether the broader aspect of the invention was presented to the mind of the attorney in the original application, and was, by either his express or his necessarily implied intent, abandoned. There is no occasion to doubt the general proposition that, if a broad claim to which the inventor was probably not entitled was presented and abandoned on the original application, this does not prevent obtaining by reissue a substantially more limited, and therefore different, claim, to which the inventor was really entitled, and which he presumptively might have obtained in the original; but the material difference in this respect is not to be found merely in a choice of words, which may not imply a difference, nor in trifles, which may not be material. We must conclude that the essential, possibly inventive, thought which distinguishes the reissue from the original, was also the dominant characteristic in this group of claims thus abandoned. When we compare the original 9 with the reissue 6, we find, in addition to variations in language which are clearly merely different ways of describing the same thing, these further differences: (a) In the reissue, it is specified that the channel is "laterally and radially" offset from the rim base. In the original, the channel is "disposed at an angle oblique to the plane of the base member." The only distinction is that the reissue requires this channel to be laterally offset from the rim. There could be no doubt that the angle intended in the original claim was an angle extending radially and laterally from the outer edge of the rim. Nothing else was shown in the specification

a plurality of juxtaposed bearing surfaces unalined one with another and grouped about one corner of the channel and engageable with a plurality of corresponding surfaces of the channeled portion of the base member.

"6. A vehicle rim structure for tires having straight-side bead portions comprising, a rim base having an annular channel formed in one of its marginal portions, the outer wall of said channel being inwardly inclined relative to the tire-engaging surface of the rim base and laterally and radially offset therefrom, and a one-piece split self-retaining flange ring having inherent contractile resiliency and embodying a tire-engaging flange, an annular shoulder adapted to seat on the peripheral face of the outer wall of the channel beyond the plane of the outer edge of the base of the tire, and an oblique annular portion adapted to enter the channel to engage the inner face of the outer wall of the channel, said oblique portion being spaced from the bottom of the channel to insure the seating of the annular shoulder of the ring on the peripheral face of the outer wall of the channel."

or drawings, and no other effective form of such an oblique angle seems to be thinkable. (b) In the reissue, the ring is specified as being made of one piece with inherent contractile resiliency. This description of the ring was not found in the original claim, but we think it was plainly implied. Nothing else was shown in the specification or drawings, nothing else would afford the benefits claimed, and apparently nothing else would be operative. (c) The reissue specified that the seating of the ring shoulder on the outer side of the channel should be "beyond the plane of the outer edge of the base of the tire." This limitation is not verbally found in original claim 6; but, the depending portion carrying the channel being at the outer edge of the rim, the outer edge of the channel is necessarily beyond the outer edge of the base of the tire. Again it seems that no structural variation can be conceived of which would be appropriate to the original claim, and which would not carry this location of the outer shoulder seat. (d) The reissue specified that there should be a space maintained between the bottom of the channel and the lower edge of the ring flange. This limitation was not found in the original claim. It furnishes the most plausible suggestion which we find that the reissue was materially limited as compared with the abandoned original; but we think the limitation not important enough to affect the result. The drawings of the original showed the presence of this space, but neither its existence nor its function was mentioned in the specification. Likewise the reissue specification is silent as to the presence or the effect of this space. It is doubtless true that, if the ring extended to the bottom of the channel, and were then made a trifle too large, it would ride on the bottom, and the perfection of bearing at the contacting upper edge or edges of the channel would be affected; but it is hard to regard the presence or absence of this space as more than a patentably immaterial variation. Further, we observe that the rejection of claim 9 of the original was upon reference to Sangster, and Sangster disclosed this very space. It seems clear enough that applicant acquiesced in the rejection on Sangster, because he conceded that Sangster disclosed the one-edge contact, which was the distinguishing characteristic of claim 9, and that, if this claim had contained also reference to this space, the rejection would have been the same, and the abandonment would have been the same. Hence, we cannot think that the failure to present claim 9, with the additional limitation

implied by calling for this space, was a material inadvertence.

This conclusion requires the affirmance of the decree below. Judge DONAHUE before his death participated in the conference discussion and concurred in the decision of this case, but did not see this opinion.